[No. S090076. Aug. 2, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
SAY SENGPADYCHITH, Defendant and Appellant.

In re SAY SENGPADYCHITH on Habeas Corpus.

COUNSEL

David McNeil Morse, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Ronald E. Niver and Ronald A. Bass, Assistant Attorneys General, Catherine A. Rivlin, Mark S. Howell and Michael D. O'Reilley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Step by step, this court continues its struggle through the thicket of statutory construction issues presented by the California Street Terrorism Enforcement and Prevention Act of 1988, also known as the STEP Act. (Stats. 1988, ch. 1242, § 1, pp. 4127-4129; see *People v. Robles* (2000) 23 Cal.4th 1106 [99 Cal.Rptr.2d 120, 5 P.3d 176]; *People v. Castenada* (2000) 23 Cal.4th 743 [97 Cal.Rptr.2d 906, 3 P.3d 278]; *People v. Zermeno* (1999) 21 Cal.4th 927 [89 Cal.Rptr.2d 863, 986 P.2d 196]; *People v. Loeun* (1997) 17 Cal.4th 1 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; *People v. Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713].) Like *Gardeley*, this case involves Penal Code section 186.22, subdivision (b), a sentence enhancement provision for felonies committed "for the benefit of, at the direction of, or in association with any *criminal street gang*."[1] (Italics added.) The STEP Act defines a criminal street gang as "any ongoing organization, association, or group of three or more persons, whether formal or informal" that has as one of its "primary activities" the commission of one or more

---

[1]Further undesignated statutory references are to the Penal Code.

statutorily enumerated criminal offenses and through its members engages in a "pattern of criminal gang activity." (§ 186.22, subd. (f).) In *Gardeley*, we construed the phrase "pattern of criminal gang activity," but we also touched on the gang statute's "primary activities" requirement, an issue in this case.

The questions we decide here are these:

1. May the jury consider the circumstances of the charged crimes on the issue of the group's primary activities? We hold that it can.

2. What standard of harmless error governs a trial court's failure to instruct the jury on the requisite primary activities of the group? To answer this question, we look to the United States Supreme Court's recent decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*). That case holds as a matter of federal constitutional law: "Other than the fact of a prior conviction, *any fact that increases the penalty* for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490 [120 S.Ct. at pp. 2362-2363], italics added.) Applying *Apprendi* here, we conclude that, for felonies *not* punishable by an indeterminate term of imprisonment for life, the gang statute's requirement of a finding by the trier of fact on the group's primary activities is a "fact that increases the penalty" for the charged crime. Because such a finding is necessary to prove the criminal street gang enhancement, it is an element of the enhancement. Therefore, a trial court's failure to instruct the jury on the necessity of such a finding is federal constitutional error. Such error must be evaluated under the high court's test in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (*Chapman*), which asks whether the prosecution has "prove[d] beyond a reasonable doubt that the error . . . did not contribute to" the jury's verdict. (*Id.* at p. 24 [87 S.Ct. at p. 828].)

The gang enhancement provision does not, however, increase the maximum term of imprisonment for felonies punishable by life imprisonment: A defendant sentenced to life imprisonment for a gang-related crime is statutorily required to serve at least 15 years of that sentence before becoming eligible for parole. Because for this category of offenses the gang statute does not increase the maximum penalty for the crime, the failure to instruct on the primary activities requirement does not violate the federal Constitution. In that situation, therefore, *Apprendi* does not apply. Instead, it is a matter of state law error, subject to the test this court articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*), which asks

whether without the error it is "reasonably probable" the trier of fact would have reached a result more favorable to the defendant.[2]

I

The prosecution charged defendant with five counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 189, 664, subd. (a)), shooting at an inhabited dwelling house (§ 246), and shooting at an unoccupied motor vehicle (§ 247, subd. (b)). Each offense carried allegations of various sentence enhancements, including one for committing the offense to benefit a criminal street gang. (§ 186.22, subd. (b).)

At trial, the prosecution presented this evidence:

At 5:00 p.m. on May 9, 1996, Soeury "Eve" Pen was in the front yard of her home in San Jose with her friends Joel Dacanay, Pao Av, and Sal Vong, when defendant, who was her former boyfriend and a member of the Triple S gang, telephoned. Eve refused to talk to him. Dacanay, a member of Real Pinoy Brothers (RPB), Triple S's main rival, returned the call and issued a gang challenge, in which Av and Vong joined.

Around 6:45 p.m., defendant and some companions drove to Eve's house in a car and a truck. Standing outside were Av, Vong, and Dacanay. Also with them were Graylone Brown and Travis Cruz. Someone in the car yelled "Who's RPB?" Dacanay answered *he* was. Defendant then got out of the truck with a handgun and started firing, hitting Cruz in the chest. Defendant also shot through a window and a wall of a nearby house, and he and a companion both shot through the rear window of a van parked on the street.

Detective Marty Hogan of the San Jose Police Department's Violent Crime Unit, which investigates gang crimes, testified to a September 3, 1993, shooting committed by Triple S member Darius Augustin. That crime, like the shootings in this case, was in Detective Hogan's opinion committed to benefit the Triple S gang.

The trial court instructed the jury on the criminal street gang sentence enhancement but failed to explain that, to trigger that provision, the jury had to find that one of Triple S's primary activities was the commission of one or more statutorily enumerated felonies. (See § 186.22, subds. (e) & (f).)

---

[2]For this one category of offenses, subdivision (b) of section 186.22 does not increase or enhance the prescribed punishment for the underlying crime. Nevertheless, because the provision does enhance punishment for most gang-related crimes, we will, consistent with common usage, call it an "enhancement."

The jury convicted defendant of four counts of attempted murder and of shooting at an unoccupied motor vehicle. But it acquitted him of shooting at an inhabited dwelling house, finding him guilty of the lesser included offense of grossly negligent discharge of a firearm (§ 246.3). The jury also found true each of the criminal street gang and other sentence-enhancement allegations.

On one of the counts of attempted murder, the trial court sentenced defendant to an indeterminate term of imprisonment for life, consecutive to a determinate term of imprisonment. The court imposed concurrent sentences for defendant's other offenses.

On defendant's appeal, the Court of Appeal reversed and remanded for correction of certain sentencing errors. It also faulted the trial court for not instructing the jury on the gang enhancement's primary activities requirement, but it found the error harmless under *Watson, supra,* 46 Cal.2d 818, 836. In support, the Court of Appeal cited this court's decision in *People v. Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77] (*Wims*).

After the Court of Appeal issued its decision, the United States Supreme Court decided *Apprendi, supra,* 530 U.S. 466. Defendant notified the Court of Appeal, asking it to grant rehearing on its own motion to reconsider the instructional issue, but the court lost jurisdiction without acting on that request.

We granted defendant's petition for review.

## II

■ To trigger the gang statute's sentence-enhancement provision (§ 186.22, subd. (b)), the trier of fact must find that one of the alleged criminal street gang's primary activities is the commission of one or more of certain crimes listed in the gang statute. In *People v. Gardeley, supra,* 14 Cal.4th 605 (*Gardeley*), that requirement was satisfied by the testimony of a police gang expert who expressed his opinion that the primary activities of the group in question were drug dealing and witness intimidation, both statutorily listed crimes. (See *Gardeley, supra,* 14 Cal.4th at pp. 611, 620.) Neither of these crimes was charged in *Gardeley*; they reflected past criminal conduct by members of the gang.

A year later, the Court of Appeal in *In re Elodio O.* (1997) 56 Cal.App.4th 1175, 1181 [66 Cal.Rptr.2d 95], read *Gardeley* as allowing only "past activity, not current offenses" as evidence of an alleged gang's primary

activities. The next year, the Court of Appeal in *People v. Galvan* (1998) 68 Cal.App.4th 1135, 1140 [80 Cal.Rptr.2d 853], disagreed, holding that "either prior conduct or acts committed at the time of the charged offenses can be used to establish the 'primary activities' element of the gang enhancement." As we explain, we agree with *Galvan*.

A

The STEP Act defines a criminal street gang as "any ongoing organization, association, or group of three or more persons, whether formal or informal, *having as one of its primary activities the commission of one or more of [certain enumerated] criminal acts . . .* , having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.) Nothing in this statutory language prohibits the trier of fact from considering the circumstances of the *present* or charged offense in deciding whether the group has as one of its primary activities the commission of one or more of the statutorily listed crimes.

Evidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities. Both past and present offenses have some tendency in reason to show the group's primary activity (see Evid. Code, § 210) and therefore fall within the general rule of admissibility (*id.*, § 351). Insofar as the Court of Appeal's decision in *In re Elodio O.*, *supra*, 56 Cal.App.4th 1175, allowed evidence only of *past* offenses, we disapprove it.

B

As we just discussed, evidence of either past or present criminal acts listed in subdivision (e) of section 186.22 is admissible to establish the statutorily required primary activities of the alleged criminal street gang. Would such evidence alone be sufficient to prove the group's primary activities? Not necessarily. The phrase "primary activities," as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's "chief" or "principal" occupations. (See Webster's Internat. Dict. (2d ed. 1942) p. 1963 [defining "primary"].) That definition would necessarily exclude the occasional commission of those crimes by the group's members. As the Court of Appeal cautioned in *People v. Gamez* (1991) 235 Cal.App.3d 957, 970-971 [286 Cal.Rptr. 894], disapproved on another point in *Gardeley*, *supra*, 14 Cal.4th 605, 624, footnote 10: "Though members of the Los Angeles Police Department may commit

an enumerated offense while on duty, the commission of crime is not a *primary activity* of the department. Section 186.22 . . . requires that one of the primary activities of the group or association itself be the commission of [specified] crime[s]. . . . Similarly, environmental activists or any other group engaged in civil disobedience could not be considered a criminal street gang under the statutory definition unless one of the primary activities of the group was the commission of one of the [25] enumerated crimes found within the statute.''

Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony, as occurred in *Gardeley, supra,* 14 Cal.4th 605. There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies. (See § 186.22, subd. (e)(4) & (8).) The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on "his personal investigations of hundreds of crimes committed by gang members," together with information from colleagues in his own police department and other law enforcement agencies. (*Gardeley, supra,* at p. 620.)

## III

What harmless error standard governs a trial court's failure to instruct the jury on the primary activities element of the criminal street gang enhancement provision? Under the high court's recent decision in *Apprendi, supra,* 530 U.S. 466, the answer depends on whether the enhancement provision increases the maximum possible penalty for the underlying crime.

## A

█ The federal Constitution's Fifth Amendment right to due process and Sixth Amendment right to jury trial, made applicable to the states through the Fourteenth Amendment, require the prosecution to prove to a jury beyond a reasonable doubt every element of a *crime.* (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182].) Thus, a trial court's failure to instruct on an element of a *crime* is federal constitutional error (see *United States v. Gaudin* (1995) 515 U.S. 506, 509-511, 522-523 [115 S.Ct. 2310, 2313-2314, 2319-2320, 132 L.Ed.2d 444]) that requires reversal of the conviction unless it can be shown "beyond a reasonable doubt" that the error did not contribute to the jury's verdict (*Chapman, supra,* 368 U.S. at p. 24 [87 S.Ct. at p. 828]; *People v.*

*Flood* (1998) 18 Cal.4th 470, 492-504 [76 Cal.Rptr.2d 180, 957 P.2d 869]; see *Neder v. United States* (1999) 527 U.S. 1, 8-15 [119 S.Ct. 1827, 1833-1837, 144 L.Ed.2d 35]). Does the *Chapman* test also apply to the failure to instruct on a sentence enhancement? We explore this issue below.

This court held in *Wims* that under California statutory law the prosecution must prove beyond a reasonable doubt every element of a sentence enhancement, but that the federal Constitution does not impose such a requirement. (*Wims, supra,* 10 Cal.4th at pp. 298, 302-309, 314; but see *id.* at pp. 316-317 (conc. & dis. opn. of Mosk, J.); and *id.* at pp. 317-329 (conc. & dis. opn. of Kennard, J.).) *Wims* relied primarily on *McMillan v. Pennsylvania* (1986) 477 U.S. 79 [106 S.Ct. 2411, 91 L.Ed.2d 67] (*McMillan*), in which the high court considered a mandatory minimum sentencing law that required trial courts to impose a five-year minimum prison term on defendants who possessed a firearm in the commission of certain felonies; this five-year term did not, however, exceed the statutory maximum for any of the covered crimes. (*Id.* at pp. 81-82 [106 S.Ct. at pp. 2413-2414].) Noting that the Pennsylvania Legislature expressly intended firearm possession to be a "sentencing factor that comes into play only after the defendant has been found guilty of one of [the enumerated] crimes," *McMillan* held that such sentencing factors need not be proved to a jury beyond a reasonable doubt. (*Id.* at pp. 80, 85-91 [106 S.Ct. at pp. 2413, 2414-2419].)

Because this court in *Wims* concluded that the California Legislature intended *all* statutory enhancements to be sentencing factors, it held that the failure to instruct the jury on an element of a sentence enhancement violated state law but not the federal Constitution. (*Wims, supra,* 10 Cal.4th at pp. 301, 306-307, 314.) Thus, *Wims* said, such error must be evaluated under this court's test in *Watson, supra,* 46 Cal.2d at page 836, which asks whether without the error it is "reasonably probable" that a result more favorable to the defendant would have been obtained. (*Wims, supra,* at p. 315.)

Five years after this court's 1995 decision in *Wims,* the United States Supreme Court held in *Apprendi*: "Other than the fact of a prior conviction, *any fact that increases the penalty* for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490 [120 S.Ct. at pp. 2362-2363], italics added.) The high court's reasoning was this: The federal Constitution requires the elements of a crime to be proved beyond a reasonable doubt *because they expose the defendant to punishment;* likewise, the elements of a sentence enhancement must be proved beyond a reasonable doubt if there is exposure to *increased* punishment. (*Apprendi, supra,* 530 U.S. at pp. 474-476, 482-484 [120 S.Ct. at pp. 2354-2356, 2358-2360]; see *id.* at

pp. 494-495 [120 S.Ct. at pp. 2365-2366.) The court treated a sentence enhancement as the functional equivalent of a crime. (*Id.* at pp. 476-477, 483, fn. 10 [120 S.Ct. at pp. 2355-2356, 2359].) To put it more accurately, *Apprendi* treated the crime together with its sentence enhancement as the "functional equivalent" of a single "greater" crime. (*Id.* at pp. 490-495 & fn. 19 [120 S.Ct. at pp. 2362-2365].)

■ This is what *Apprendi* teaches us: Except for sentence enhancement provisions that are based on a defendant's prior conviction, the federal Constitution requires a jury to find, beyond a reasonable doubt, the existence of every element of a sentence enhancement that increases the penalty for a crime beyond the "prescribed statutory maximum" punishment for that crime. (*Apprendi, supra,* 530 U.S. at p. 490 [120 S.Ct. at p. 2363].) Therefore, a trial court's failure to instruct the jury on an element of a sentence enhancement provision (other than one based on a prior conviction), is federal constitutional error if the provision "increases the penalty for [the underlying] crime beyond the prescribed statutory maximum." (*Ibid.*) Such error is reversible under *Chapman, supra,* 386 U.S. at page 24 [87 S.Ct. at page 828], unless it can be shown "beyond a reasonable doubt" that the error did not contribute to the jury's verdict.

With regard to its earlier decision in *McMillan, supra,* 477 U.S. 79, which held there is no federal constitutional right to a jury determination of a "sentencing factor," the high court stressed in *Apprendi*: "We do not overrule *McMillan* [but instead] . . . limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation identified in the *McMillan* opinion itself." (*Apprendi, supra,* 530 U.S. at p. 487, fn. 13 [120 S.Ct. at p. 2361].) The court added that it was "reserv[ing] for another day" whether considerations of stare decisis precluded its reconsideration of *McMillan. (Ibid.)*

In *Wims, supra,* 10 Cal.4th 293, this court expressly relied on *McMillan, supra,* 477 U.S. 79. Because *McMillan* has not been overruled, *Wims* survives as to sentence enhancement provisions that do not increase the statutorily prescribed maximum penalty for the underlying crime. Thus, a trial court's failure to instruct on an element of such provisions must on appeal be evaluated under *Watson, supra,* 46 Cal.2d at page 836, whose harmless error test we discussed on pages 320-321, *ante.*[3]

---

[3]Justice Brown's concurring opinion asserts that the high court's rationale in *Apprendi, supra,* 530 U.S. 466, "effectively eviscerates" its earlier decision in *McMillan, supra,* 477 U.S. 79. (Conc. opn. of Brown, J., *post,* at p. 332.) But as we discussed on this page, *ante,* the

B

■ Does the criminal street gang sentence enhancement increase the penalties for the underlying crimes? Yes, for two categories of felony offenses listed in the enhancement provision.

For certain specified felonies punishable by a determinate term of imprisonment, the criminal street gang enhancement *increases* the punishment for the offense to an indeterminate term of imprisonment *for life*. (§ 186.22, subd. (b)(4).) For all other felonies punishable by a determinate term of imprisonment, the enhancement adds a separate term of imprisonment "*in addition and consecutive to*" the punishment otherwise prescribed for the felony. (§ 186.22, subd. (b)(1), italics added.) Thus, in these two categories, the gang enhancement *increases* the sentence for the underlying crime beyond its statutory maximum. In these instances, therefore, a trial court's failure to instruct on an element of the gang enhancement is federal constitutional error (*Apprendi, supra,* 530 U.S. at p. 490 [120 S.Ct. at pp. 2362-2363]), reviewable under the harmless error standard of *Chapman, supra,* 386 U.S. at page 24 [87 S.Ct. at page 828], a test we discussed on page 320, *ante.*

The gang statute has a third category of felony offenses—those that are punishable by an indeterminate term of imprisonment *for life*. For these felonies, the gang enhancement provision does not alter the indeterminate term of life imprisonment; it merely prescribes the minimum period the defendant must serve before becoming eligible for parole. (§ 186.22, subd. (b)(5) [providing for this category of felonies committed to benefit a street gang, the defendant "shall not be paroled until a minimum of 15 calendar years have been served"].) Thus, for these felonies, the gang enhancement provision does *not* increase the life term for the underlying offense. Consequently, in this category of cases instructional error on an element of the gang enhancement provision does not violate the federal Constitution (see *Apprendi, supra,* 530 U.S. at p. 490 [120 S.Ct. at pp. 2362-2363]), but only California law, making the error reviewable under the standard we articulated in *Watson, supra,* 46 Cal.2d 818, 836, a test we discussed on pages 320-321, *ante.*

C

Here, the jury convicted defendant of four counts of attempted willful, deliberate, and premeditated murder, as well as one count of grossly negligent discharge of a firearm. With respect to all five offenses, the jury found they were committed to benefit a criminal street gang.

---

high court expressly reserved for another day any reconsideration of *McMillan.* That is a matter within the province of the high court, not ours.

The crime of attempted willful, deliberate, and premeditated murder falls within the gang statute's category of offenses punishable by an indeterminate term of imprisonment for life. As we explained in the preceding part, for these offenses the gang enhancement prescribes only the minimum term before parole eligibility. Before becoming eligible for parole, a defendant who has committed such an offense with a gang enhancement must serve *a minimum term of 15 years* (§ 186.22, subd. (b)(4)), rather than the minimum term of seven years (§ 3046) required of those convicted of the same offense without the criminal street gang sentence enhancement. There is no increase in the maximum statutory penalty for the crime of attempted murder, which remains "imprisonment in the state prison for life with the possibility of parole." (§ 664, subd. (a).) Therefore, for this category of offenses instructional error of the type at issue in this case is, for reasons discussed in the preceding section, subject to this court's harmless error test in *Watson*, *supra*, 46 Cal.2d 818, 836.

The crime of gross negligence in discharging a firearm is among the felonies for which the gang enhancement provision sets forth a separate term of imprisonment "in addition and consecutive to" the punishment otherwise prescribed for the offense (§ 186.22, subd. (b)(1)), thus *increasing* the crime's statutorily set maximum sentence.[4] Therefore, for this offense the trial court's instructional error here is, for reasons discussed in the preceding section, federal constitutional error and subject to the high court's harmless error test in *Chapman*, *supra*, 386 U.S. at page 24 [87 S.Ct. at page 828]. Accordingly, the Court of Appeal here erred in applying the test of *Watson*, *supra*, 46 Cal.2d at page 836, which pertains to state law error.

## IV

On remand, the Court of Appeal is to determine with respect to the offense of gross negligence in discharging a firearm whether the trial court's instructional error was harmless under *Chapman* (see *People v. Breverman* (1998) 19 Cal.4th 142, 178-179 [77 Cal.Rptr.2d 870, 960 P.2d 1094])[5] and, with respect to the offense of attempted murder, whether the same error was

---

[4]For grossly negligent discharge of a firearm, as for most crimes in this category, subdivision (b)(1) of section 186.22 increases the term of imprisonment by "two, three, or four years at the court's discretion." At the time defendant committed his offenses, subdivision (b)(1) of section 186.22 increased the term of imprisonment by "one, two, or three years at the court's discretion." (Former § 186.22, subd. (b)(1), Stats. 1995, ch. 377, § 2.) For "serious" felonies as set forth in subdivision (c) of section 1192.7, the added penalty is five years. For "violent" felonies as defined in subdivision (c) of section 667.5, the added term is 10 years. (§ 186.22, subd. (b)(1).)

[5]The Attorney General concedes that the harmless error test in *Chapman*, *supra*, 386 U.S. 18, 24 [87 S.Ct. 824, 828], also applies to the trial court's instructional error with respect to section 12021.5, an enhancement for carrying a firearm when committing a gang-related

harmless under *Watson, supra*, 46 Cal.2d at page 836. And the court should also reconsider defendant's claim that the prosecution's evidence was insufficient to support a jury finding that defendant's gang, Triple S, was primarily engaged in the commission of one or more offenses specified in the gang statute. In finding the evidence sufficient, the Court of Appeal concluded the prosecution had established that a primary activity of Triple S was committing "gang crimes," but it failed to identify the felonies comprising the gang's primary activities. (See § 186.22, subdivision (e) [listing the specific felonies that can satisfy the gang statute's "primary activities" requirement].)

### DISPOSITION

For the reasons stated above, we reverse the judgment of the Court of Appeal and remand the matter to that court for proceedings not inconsistent with this opinion.

It is so ordered.

George, C. J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**BROWN, J.,** Concurring.—Because it apparently follows from a literal reading of certain language in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*), I concur in the result as to the standard of review of the trial court's instructional error.

I write separately, however, to question the anomaly created in applying that literal reading to a sentencing enhancement such as Penal Code section 186.22 that contains a series of escalating additional penalties. Defendant's several crimes were subject to enhanced punishment upon the jury's finding that he committed them "for the benefit of, at the direction of, or in association with any criminal street gang" with the requisite specific intent. (Pen. Code, § 186.22, subd. (b)(1).) As the majority correctly concludes in light of *Apprendi*, instructional error as to that finding is reviewed under the *Chapman* harmless beyond a reasonable doubt standard (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]) with respect to those offenses coming within section 186.22, subdivision (b)(1) and (4) because that subdivision "increases the penalty for a crime beyond the prescribed statutory maximum . . . ." (*Apprendi, supra*, 530 U.S. at p. 490 [120 S.Ct. at pp. 2362-2363].) With respect to offenses coming within Penal Code section 186.22, subdivision (b)(5), however, *the very same error on the very same facts* does not invoke

---

crime. The enhancement under that provision contributed two years to the determinate term defendant must serve before beginning his life sentence.

*Apprendi* and therefore is assessed according to the *Watson* miscarriage of justice standard (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) because only the mandatory minimum punishment is increased, not the statutory maximum of life in prison. (See *Apprendi, supra*, 530 U.S. at pp. 482-483, 487, fn. 13 [120 S.Ct. at pp. 2354-2356, 2361]; *McMillan v. Pennsylvania* (1986) 477 U.S. 79, 87-88 [106 S.Ct. 2411, 2416-2417, 91 L.Ed.2d 67] (*McMillan*).)

The language of *Apprendi* may not be quite so categorical as the majority implies. Quoting Justice Scalia's dissent in *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 251 [118 S.Ct. 1219, 1234-1235, 140 L.Ed.2d 350], the high court majority expressly noted, "Since *Winship* [*In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368]], we have made clear beyond peradventure that *Winship*'s due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, *but simply to the length of his sentence.*' [Citation.]" (*Apprendi, supra*, 530 U.S. at p. 484 [120 S.Ct. at p. 2359], italics added.) The court also emphasized that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id.* at p. 494 [120 S.Ct. at p. 2365], fn. omitted.) These passages suggest an enhancement that increases the defendant's actual punishment must surmount constitutional hurdles, even if the potential maximum remains the same.

The majority relies substantially on the fact the *Apprendi* court did not overrule *McMillan, supra*, 477 U.S. 79. Granted, *McMillan* has ostensibly survived, but only barely and only for the moment—as the New Jersey Supreme Court persuasively concluded in *State v. Johnson* (2001) 166 N.J. 523 [766 A.2d 1126] (*Johnson*), which also involved an enhancement increasing the defendant's mandatory minimum sentence. (But see, e.g., *U.S. v. Aguayo-Delgado* (8th Cir. 2000) 220 F.3d 926, 933 [finding the rule of *Apprendi* does not apply to a factual determination that "only narrows the sentencing judge's discretion" within a previously authorized range].) Drawing on the views of a collective majority of the United States Supreme Court justices expressed in separate opinions, the court inferred "that the continuing vitality of *McMillan* itself may be in question. . . . [B]oth the principal concurrence and dissent in *Apprendi* . . . construed the majority opinion as mandating reversal of *McMillan* and invalidation of the mandatory minimum statutes in the mold of the Pennsylvania law. [Citations.]" (*Johnson, supra*, 766 A.2d at p. 1136.)

"The [*Apprendi*] majority noted specifically that its reasoning did not necessarily conflict with the narrow holding[] of *McMillan* . . . , because

the statute in *McMillan* did not increase the overall maximum prison term, [citation] . . . . However, an undeniable tension, explicitly recognized in Justice O'Connor's dissent, [citation] exists between the formal distinctions drawn between the cases and the language of the *Apprendi* majority indicating that 'the relevant inquiry is not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?' [Citation.] [¶] Recognizing that tension, the majority made explicit its reservations about the future application of *McMillan,* although it specifically avoided reconsideration of *McMillan*'s holding . . . ." (*Johnson, supra,* 766 A.2d at p. 1134; see *Apprendi, supra,* 530 U.S. at p. 487, fn. 13 [120 S.Ct. at p. 2361].)

As the *Johnson* court noted, Justice Thomas's concurrence evinced no such reserve. "Considering *McMillan* in light of those common-law roots [informing the majority's rationale], the concurrence found it 'clear that the common-law rule would cover the *McMillan* situation of a mandatory-minimum sentence': 'No doubt a defendant could, under such a scheme, find himself sentenced to the same term to which he could have been sentenced absent the mandatory minimum. . . . (Of course, a similar scenario is possible with an increased maximum.) But it is equally true that his expected punishment has increased as a result of the narrowed range and that the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. The mandatory minimum entitles the government to more than it would otherwise be entitled . . . . Thus, the fact triggering the mandatory minimum is part of the punishment sought to be inflicted; it undoubtedly enters into the punishment so as to aggravate it, and it is an act to which the law affixes punishment.' [Citation.]" (*Johnson, supra,* 766 A.2d at p. 1135, quoting *Apprendi, supra,* 530 U.S. 466, 521 [120 S.Ct. 2348, 2379] (conc. opn. of Thomas, J.); see also *Apprendi, supra,* 530 U.S. 466, 533 [120 S.Ct. 2348, 2385-2386] (dis. opn. of O'Connor, J.) ["The essential holding of *McMillan* conflicts with at least two of the several formulations the Court gives to the rule it announces today"].)

In concluding that the rule of *Apprendi* applies to a mandatory minimum increase, the New Jersey Supreme Court also found support in its own jurisprudence, which " 'always recognized that *real time* is the realistic and practical measure of the punishment imposed.' [Citations.]" (*Johnson, supra,* 766 A.2d at p. 1137, italics added; cf. *Weaver v. Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960, 965, 67 L.Ed.2d 17] [finding reduced accumulation of monthly gain-time credits constituted punishment for ex post facto analysis: "it is the effect, not the form, of the law that determines"].) California statutory and decisional law accords with this recognition: For example, the

three strikes law is intended "to ensure longer prison sentences and greater punishment" for certain recidivists. (Pen. Code, § 667, subd. (b).) To that end, the statutory scheme allows fewer conduct credits to be awarded against a mandatory indeterminate term (*id.*, § 667, subd. (c)(5); see *In re Cervera* (2001) 24 Cal.4th 1073, 1076 [103 Cal.Rptr.2d 762, 16 P.3d 176]) and provides that the minimum term for an indeterminate sentence is doubled (Pen. Code, § 667, subd. (e)(1); see *People v. Jefferson* (1999) 21 Cal.4th 86, 96 [86 Cal.Rptr.2d 893, 980 P.2d 441]). As this court explained in *Jefferson*, "under the present law the prison 'term' is the actual time served in prison before release on parole . . . ." (*Jefferson*, at p. 95, italics omitted.)

Penal Code section 2900.5 credits "all days of custody of the defendant, including days served as a condition of probation . . . , upon his or her term of imprisonment . . . ." This provision in part "eliminate[s] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, serve[] a longer overall confinement than their wealthier counterparts. [Citations.]" (*In re Rojas* (1979) 23 Cal.3d 152, 156 [151 Cal.Rptr. 649, 588 P.2d 789].) In *People v. Olivas* (1976) 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375], this court concluded Penal Code section 1731.5 violated equal protection because it authorized certain juvenile offenders committed to the Youth Authority to "be subjected to significantly greater terms of incarceration" "despite the fact that they are treated in the same manner as any competent adult during the process which results in their convictions . . . ." This court has also found ineffective assistance of counsel where the attorney's advice to reject a plea bargain failed to include the mandatory minimum sentence the defendant would receive if convicted at trial. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937 [8 Cal.Rptr.2d 713, 830 P.2d 747].) Moreover, "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute . . . ." (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].)

Since *Apprendi* did not involve an enhancement increasing the defendant's mandatory minimum sentence, the United States Supreme Court could justifiably avoid for the present determining the application of its rationale in that circumstance. (See *Apprendi, supra*, 530 U.S. at p. 487, fn. 13 [120 S.Ct. at p. 2361].) This court cannot. The rationale of *Apprendi*—as well as the express views of a majority of the justices—effectively eviscerates the holding in *McMillan*; yet the majority demurs to filling the resulting interstices, a reluctance uncharacteristic of the court. (See, e.g., *People v. Monge* (1997) 16 Cal.4th 826, 834-843 [66 Cal.Rptr.2d 853, 941 P.2d 1121].)

This case illustrates why *McMillan* ultimately must fall. It makes no constitutional sense to apply the federal standard to an enhancement when it

adds two, three, or four years to defendant's total sentence for gross negligence in discharging a firearm but not when it "merely" ensures he will remain in prison eight additional years before becoming eligible for conditional release. (See maj. opn., *ante*, at p. 327.) In *Apprendi*, the majority rejected the state's reliance on *McMillan* based simply on the *possibility* of a comparable increase in punishment: "[I]t can hardly be said that the potential doubling of one's sentence—from 10 years to 20—has no more than a nominal effect. Both in terms of absolute years behind bars, and because of the more severe stigma attached, the differential here is unquestionably of constitutional significance." (*Apprendi, supra*, 530 U.S. at p. 495 [120 S.Ct. at p. 2365].) Regardless of any other consideration, an increased penalty of eight years imprisonment counsels closer analysis, not rote invocation of dictum.

We have once already misjudged the implications of *McMillan* in *People v. Wims* (1995) 10 Cal.4th 293, 305-308 [41 Cal.Rptr.2d 241, 895 P.2d 77]. The anomaly created by the majority's interpretation of *Apprendi* suggests we have done so again.

Appellant's petition for a rehearing was denied October 17, 2001, and the opinion was modified to read as printed above.