Filed 6/19/14  P. v. Morales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057189 |
| v. | (Super.Ct.No. FVA901987) |
| MARK RODRIGUEZ MORALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed in part; reversed in part with directions.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy A. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Mark Rodriguez Morales, guilty of (1) first degree murder (Pen. Code, § 187, subd. (a));[1] and (2) willful, deliberate, premeditated attempted murder (§§ 664, 187, subd. (a)). As to both counts, the jury found true the allegations that defendant (1) personally and intentionally discharged a firearm causing injury or death (§ 12022.53, subd. (d)); and (2) defendant committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang, specifically, Fontana Hard Times (§ 186.22, subd. (b)). In regard to the attempted murder count, the jury also found true the allegation that defendant inflicted great bodily injury causing paralysis. (§ 12022.7, subd. (b).)

Defendant was a minor (16 years old) at the time the crimes were committed, but he was tried as an adult. The trial court sentenced defendant to prison for a determinate term of five years and an indeterminate term of 82 years to life. Defendant raises two issues on appeal. First, defendant asserts the evidence does not support the finding that Fontana Hard Times's primary activities include murder. (§ 186.22, subd. (b).) Second, defendant asserts the trial court erred by imposing a separate five-year prison term for the great bodily injury/paralysis enhancement (§ 12022.7, subd. (b)). The People concede defendant's second contention is correct. We reverse the gang enhancement findings and the five-year great bodily injury sentence.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

A.   CRIMES

The murder victim is Josue Romero (Romero).  The attempted murder victim is Andrew Guzman (Guzman).  On the night of December 4 and into the early morning of December 5, 2009, Romero and Guzman (collectively "the victims") were at a party.  Defendant was also at the party.  The party took place at a house in Rialto.

Defendant is a member of a gang known as Fontana Hard Times.  During the party, defendant approached the Disc Jockey (DJ) and said, "'I'm waiting for your bitch ass friends to leave.'"  The DJ was friends with Romero.  At approximately 1:00 a.m., the victims left the party and walked toward Romero's car.  Guzman heard a whistle, and the victims stopped walking.  The victims turned around and saw defendant.  Defendant said he heard the victims had said, "[F]uck [defendant's] hood."  Both victims told defendant that if they "would have said something, [they] would have said it to [defendant's] face."

Defendant pulled a gun from his jacket and began firing.  Guzman was shot before he could run.  Romero ran but was also shot.  Guzman was shot in his neck, chest, and arm.  Guzman is confined to a wheelchair due to being shot.  Romero was shot twice and died as a result of the gunshot wounds.

B.   PRIMARY GANG ACTIVITIES

1.   *EVIDENCE*

Detective Morales of the Rialto Police Department's Gang Unit testified as a gang expert.  Detective Morales initially learned about the Fontana Hard Times (FHT)

3

gang while growing up in the Fontana and Rialto area. Detective Morales has also "conducted numerous investigations involving the gang and its members." Detective Morales spoke about FHT with Detective Martinez (Martinez) of the San Bernardino County Sheriff's Department. Martinez was assigned to the Fontana Sheriff's Station for five years, in the gang unit. Martinez was part of the "Fontana Hard Times task force, which was responsible for a RICO indictment on several members of Fontana Hard Times."

Detective Morales also spoke about FHT with Sergeant Dorsey (Dorsey) of the Fontana Police Department's Narcotics Team. Dorsey had also worked in the gang unit. Dorsey conducted "numerous investigations regarding" FHT. Dorsey and Officer Binks told Detective Morales about FHT member Valentina Rodriguez, who was convicted of assault with a deadly weapon (§ 245).

Detective Morales also spoke with Officer Monto (Monto) about FHT. Monto and Detective Morales discussed FHT member, Augustine Barrasa (Barrasa). Barrasa has several family members who are members of FHT. Barrasa was convicted of transporting or selling methamphetamine. (Health & Saf. Code, § 11379.)

2.     *JURY INSTRUCTION*

The jury instruction regarding the gang enhancement provided, "A *criminal street gang* is any ongoing organization, association, or group of three or more persons, whether formal or informal; [¶] . . . [¶] 2. That has, as one or more of its primary

4

activities, the commission of murder.[2]  [¶] AND [¶]  3.  Whose members, whether acting alone or together, engage in or have engaged in a pattern of criminal gang activity."

The instruction continued, "In order to qualify as a *primary* activity, the crime must be one of the group's chief or principal activities rather than an occasional act committed by one or more persons who happen to be members of the group.  [¶]  A *pattern of criminal gang activity*, as used here, means:  [¶]  1.  The commission of, or attempted commission of, or having a juvenile petition sustained for the commission of:  [¶]  1A.  Any combination of two or more of the following crimes:  Assault with a Deadly weapon in violation of Penal Code section 245(a)(1); Transportation of a Controlled substance in violation of Health and Safety Code section 11379."

### 3.    *SENTENCE*

The trial court stayed "any punishment" associated with the gang enhancements (§ 186.22, subd. (b)), so defendant does not have a prison term associated with the gang enhancements.  The trial court stayed the punishment because the prosecutor asserted a

---

**2** On this point, the form instruction reads, "A criminal street gang is any ongoing organization, association, or group of three or more persons, whether formal or informal: . . .  2. That has, as one or more of its primary activities, the commission of _____ <*insert one or more crimes listed in* Pen. Code, § 186.22(e)(1)-(25), (31)-(33)>"  (CALCRIM No. 1401.)

defendant "can't be punished separately for the gun allegation and the gang allegation."**3**

## DISCUSSION

A.     <u>GANG ENHANCEMENT</u>

Defendant contends substantial evidence does not support the jury's finding that murder was a primary activity of FHT.  We agree.

""""When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citation.]'" (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1322.)

As part of the gang allegations, the prosecution was required to prove FHT was a criminal street gang.  To make that showing, the prosecution needed to demonstrate FHT had "as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e)."  (Former § 186.22, subd. (f) [eff. Jan. 1, 2007].)  Some of the crimes

---

**3** We infer the prosecutor was referencing section 12022.53, subdivision (e)(1), which provides a gang enhancement sentence (§ 186.22) cannot be imposed in addition to a firearm enhancement (§ 12022.53) "unless the [defendant] personally used or personally discharged a firearm in the commission of the offense."  Since the evidence reflects defendant personally discharged a firearm during the offenses, we infer the prosecutor was mistaken.

included on the subdivision (e) list are: (1) assault with a deadly weapon, (2) murder, and (3) drug sales or drug transportation. (§ 186.22, subd. (e)(1), (e)(3), (e)(4).)

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. [Citation.] That definition would necessarily exclude the occasional commission of those crimes by the group's members." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) Sufficient proof of primary activities "might consist of evidence that the group's members consistently and repeatedly have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony . . . ." (*Id.* at p. 324.)

The jury instruction informed the jury that it must find FHT "has, as one or more of its primary activities, the commission of murder." Since murder was selected as the only offense comprising the "primary activities" element, there is a substantial evidence problem. There is evidence of only one murder—defendant's killing of Romero. A single act cannot support a primary activities finding. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1223.) As set forth *ante*, the criminal activity supporting a primary activities finding must be consistently and repeatedly committed by the gang's members. (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 324.) One murder is not a consistent and repeated activity. Thus, substantial evidence does not support the jury's finding as to the "primary activities" element of the gang enhancement.

The People assert substantial evidence supports the jury's primary activity finding because (1) defendant committed murder and attempted murder, thus creating two acts the jury could consider; (2) the DJ was reluctant to speak with police because he "didn't want to die"; and (3) Detective Morales testified that defendant's acts of murder and attempted murder would show the community that members of FHT are "willing to go out there and commit murder for the benefit of the gang."

The DJ's testimony and Detective Morales's testimony do not reflect members of the gang committed murder. Rather, the testimony reflects the gang caused people to be in fear. Creating fear of murder is not the same thing as actually committing murder. The law requires the crime be a primary activity; creating a fear of murder does not equate with actually participating in the crime of murder as an activity. Thus, we find the People's reliance on the DJ's and Detective Morales's testimonies to be unpersuasive because the testimonies do not show the gang actually committed murder as a primary activity.

As to the People's reliance on defendant committing murder and attempted murder, thus creating two acts for the jury to consider, that argument is also unpersuasive. Assuming the People are correct and murder and attempted murder are the same offense for purposes of the "primary activities" element, the problem remains that the two crimes were committed by a single gang member during a single incident. Our Supreme Court has concluded the "primary activities" must be more than "occasional" activities. (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 323.) A single event, with two crimes committed by a single gang member does not create a

8

consistent and repeated activity—it is an occasional activity. (*Id.* at p. 324 [evidence the gang's members "consistently and repeatedly have committed criminal activity"].)

In a request for supplemental briefing, this Court asked the parties whether the error alleged by defendant was more in the nature of an instructional error or a substantial evidence error. We conclude the error was not instructional in nature because (1) the prosecutor did not object to the instruction, and (2) the prosecutor did not present a closing argument concerning the primary activities factor. Due to the lack of objection, it appears the prosecutor may have chosen to proceed with murder being the only crime to support a primary activities finding. In other words, since the prosecutor did not object, it seems the prosecutor may have wanted murder to form the sole basis of the primary activities finding.

The conclusion that the prosecutor wanted murder to be the sole basis of the primary activities finding is further supported by the prosecutor's lack of closing argument related to the primary activities factor of the gang enhancement. The prosecutor did not offer a theory regarding other crimes that could support the primary activities finding. Thus, without an objection and without contrary closing argument, it appears the prosecutor chose to proceed with murder as the sole basis for the primary activities finding.

In response to our supplemental briefing question, the People assert there is substantial evidence that murder, assault, and drug sales or transportation were among FHT's primary activities. After making this substantial evidence argument, the People

conclude "the error was merely instructional: the jury should have been told to consider the crimes committed by FHT members Barrasa and Rodriguez, as well."

The People's argument leaves us in quandary. While we agree there is evidence in the record concerning murder, assault, and drug sales or transportation, we are left with a gap concerning whether the prosecutor elected to proceed with only murder as the basis of the primary activities finding. The prosecutor never objected to the instruction and did not offer a theory regarding other crimes that could form the basis of the primary activities finding. The People do not explain how the trial court erred in giving an instruction that was (1) not objected to by the prosecutor, and (2) not contrary to the prosecution's argument. Thus, we cannot fault the trial court for giving an instruction that (1) was not objected to, and (2) did not conflict with the prosecutor's argument, because it is possible this is the instruction the prosecutor wanted the jury to be given.

In conclusion, substantial evidence does not support the jury's findings concerning the primary activities element of the gang enhancement (§ 186.22, subd. (b)) for Counts 1 and 2. Accordingly, we will reverse the true findings for the gang enhancements in Counts 1 and 2. Defendant's sentence will remain the same because the trial court stayed "any punishment" for the gang enhancement. Additionally, because the trial court did not impose sentences for the gang enhancements, the gang

10

enhancements do not appear on the abstract of judgment.  Therefore, we will not direct the trial court to amend the abstract of judgment as to the gang enhancements.**4**

B.     GREAT BODILY INJURY

Defendant contends the trial court erred by imposing a five-year prison term for the great bodily injury enhancement in Count 2.  (§ 12022.7, subd. (b).)  Defendant asserts this was error because the trial court imposed a term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)), and both sentences cannot be imposed. The People concede defendant is correct.

Section 12022.53, subdivision (f) provides, in relevant part, "An enhancement for great bodily injury as defined in Section 12022.7 . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to subdivision (d)."  As set forth *ante*, the trial court imposed a term of 25 years to life for the firearm enhancement, pursuant to subdivision (d).  Given the law, we conclude the trial court erred by imposing and executing sentences for the great bodily injury enhancement (§ 12022.7, subd. (b)) and the firearm enhancement (§ 12022.53, subd. (d)) in Count 2.  (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130 [sentence should be imposed and stayed].)  Thus, we will stay the five-year prison term imposed for the great bodily injury enhancement.

---

**4** Because we are reversing the findings as to the gang enhancements (§ 186.22, subd. (b)), we do not address the People's argument that 15-year minimum parole eligibility dates should be imposed for the gang enhancements (§ 186.22, subd. (b)(5)).

## DISPOSITION

The gang enhancements (§ 186.22, subd. (b)) in Counts 1 and 2 are reversed. The five-year prison term for the great bodily injury enhancement (§ 12022.7, subd. (b)), in Count 2, is stayed. The trial court is directed to prepare an amended abstract of judgment reflecting the stayed sentence for the great bodily injury enhancement and to forward it to the appropriate prison authorities. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RICHLI
Acting P. J.

CODRINGTON
J.

12