Filed 9/24/20  P. v. Solorzano CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B301661 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA142139) |
| v. | |
| ADRIAN SOLORZANO, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Adrian Solorzano was convicted of attempted murder and shooting at an occupied vehicle, which the jury found were committed for the benefit of a criminal street gang. Solarzano appeals the gang finding, contending insufficient evidence established that criminal conduct was one of his gang's primary activities. We affirm.

## BACKGROUND

On May 22, 2016, Solorzano, accompanied by Luis Uribe and a person known as "Boogie," all members of the street gang "Quiet Village," fired several shots at Eliodoro Casteneda while he was in his car, wounding him.

At trial, Uribe testified that during his four years in the gang he saw frequent fights between Quiet Village members and gang rivals, sometimes involving guns.

Los Angeles County Sheriff's Detective Edgar Romo, testifying as a gang expert, stated he had participated in numerous gang investigations in Quiet Village territory and had consulted with other detectives concerning the gang. He was personally familiar with three prior robberies by Quiet Village members in 2010 to 2011 and 2015 to 2016, remembered three cases involving illegal possession of a firearm by a Quiet Village member, and had personally investigated a prior assault with a deadly weapon committed by Solorzano and Uribe. Detective Romo also recalled two drug sales cases involving the gang. Romo concluded that Quiet Village's primary activities included illegal possession of firearms, assaults with deadly weapons, robberies, and drug sales.

A jury convicted Solarzano of premeditated attempted murder and shooting at an occupied motor vehicle, found that he personally discharged a firearm in commission of the crimes,

causing great bodily injury, and found the crimes were committed for the benefit of, or in association with, a criminal street gang. The court sentenced Solarzano to prison for 55 years to life.

**DISCUSSION**

Solorzano contends no evidence supported the jury's finding that Quiet Village was a criminal street gang, because no evidence established that criminal conduct was one of its primary activities. We disagree.

Penal Code section 186.22, subdivision (b), provides a sentence enhancement for anyone convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Subdivision (f) of section 186.22 defines "criminal street gang" as "any ongoing organization, association, or group of three or more persons" that has "as one of its primary activities the commission of one or more" of 28 criminal acts listed in subdivision (e). Subdivision (e) lists numerous crimes, including murder, robbery, assault with a deadly weapon or by means likely to produce great bodily injury, prohibited possession of a firearm, discharging a firearm from a moving vehicle, shooting at an occupied motor vehicle, and drug sales. (§ 186.22, subd. (e).)

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. [Citation.] That definition would necessarily exclude the occasional commission of those crimes by the group's members." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 (*Sengpadychith*).) Both past conduct and the circumstances of the charged offense are relevant to establish a

3

group's primary activities. (*Ibid*.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed" one or more of the enumerated crimes. (*Id*. at p. 324.) For example, in *People v. Vy* (2004) 122 Cal.App.4th 1209, the court held that three serious, violent crimes over a period of less than three months constituted sufficient evidence of a gang's primary activities. (*Id*. at p. 1222, disapproved on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.)

"Also sufficient might be expert testimony, as occurred in [*People v. Gardeley* (1996)] 14 Cal.4th 605," where "a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies." (*Sengpadychith*, *supra*, 26 Cal.4th at p. 324.) Such an expert lays a proper foundation for the testimony by establishing his or her opinion is based on "conversations with the defendants and with other [gang] members, . . . personal investigations of hundreds of crimes committed by gang members, as well as information from . . . colleagues and various law enforcement agencies." (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 613.)

We review the entire record in the light most favorable to the judgment to decide whether the record discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the gang allegation true beyond a reasonable doubt. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.)

Here, Detective Romo testified that he had conducted several investigations of Quiet Village crimes over the last

several years —assaults with weapons, robberies, and illegal possession of guns—and that fellow officers had told him of more crimes committed by the gang. From this experience, Romo came to the opinion that crime was one of Quiet Village's primary activities. In addition, Uribe, a Quiet Village member, testified that the gang frequently engaged in fights, some of which involved guns.

A reasonable jury could infer from this evidence that the gang consistently and repeatedly engaged in assaults and other crimes enumerated in Penal Code section 186.22.

Solarzano argues no substantial evidence demonstrated that Quiet Village members consistently and repeatedly engaged in criminal conduct, because two convictions, and a few arrests and/or investigations over a six-year period by a group of 30 to 40 persons fails to establish that the group's members consistently and repeatedly engage in proscribed criminal conduct. Solarzano argues that Detective Romo described only occasional criminal offenses, and Uribe described only frequent "fights" that sometimes involved guns, and it is unclear whether or how often those fights involved crimes enumerated in the gang statute. We disagree.

Detective Romo specifically testified as to Quiet Village's primary activities, basing his testimony on his years dealing with the gang, including investigations, personal conversations with gang members, and review of police reports. He recalled three prior robberies committed by Quiet Village members in 2010/2011 and 2015/2016, remembered three cases involving illegal possession of a firearm by Quiet Village members, and had personally investigated a prior assault with a deadly weapon committed by Solorzano and Uribe. Detective Romo also recalled

5

two drug sales cases involving the gang. Uribe described frequent fights, sometimes involving weapons. (Although any individual gang "fight" could conceivably fail to qualify as an assault by means likely to produce great bodily injury, as Penal Code section 186.22 requires, Uribe's description of frequent fights, some involving guns, suggested the fights were serious affairs that were likely to result in great bodily injury.)

Taken alone, the five crimes mentioned by Detective Romo from 2011 to 2016 arguably might suggest that Quiet Village's crimes were only occasional. But that testimony combined with Uribe's described a group of persons with a predilection for serious fights, fondness of weapons, and little aversion to crime. The tenor of the group and its history of repeated crimes reasonably implied that the group engaged in crime not merely on occasion, but as a matter of primary purpose.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          SINANIAN, J.*

---

\* Judge of the Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.