Filed 11/17/15  P. v. Flores CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>ALFREDO MOISES FLORES,<br><br>　Defendant and Appellant. | 2d Crim. No. B256911<br>(Super. Ct. No. VA127846)<br>(Los Angeles County) |

Alfredo Moises Flores appeals from the judgment following his conviction by jury of possession of marijuana for sale (Health & Saf. Code, § 11359; count 1) and active participation in a criminal street gang (Pen Code, § 186.22, subd. (a); count 2).[1]  The jury also found true that he committed count 1 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1).)[2]  In bifurcated proceedings appellant admitted that he had suffered a prior serious felony conviction which qualified as a strike (§§ 667, subds. (a)-(i), 1170.12, subds. (a)-(d)).  The trial court sentenced him to

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Appellant was charged and tried jointly with codefendant Valentin Chapa.  The jury convicted Chapa of possession of marijuana for sale (count 1) and active gang participation (count 2) and found the count 1 gang benefit enhancement was true.  Chapa waived his right to appeal.

nine years in state prison, including a concurrent term for count 2. Appellant contends there is not sufficient evidence to support the active participation in a criminal street gang conviction or the true finding on the gang benefit enhancement. He also contends the trial court erred by failing to give the jury a lesser included offense instruction, by imposing a serious felony enhancement and by failing to stay his count 2 sentence pursuant to section 654. Respondent appropriately concedes the section 654 sentencing issue. We modify the judgment to stay the two-year sentence on count 2, and affirm it in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

*November 16, 2012 Offenses*

On November 16, 2012, appellant was with his cousin, Valentin Chapa, in Apartment Number 5 at 20727 Seine Avenue in Lakewood when several members of the Los Angeles County Sheriff's Office arrived with an arrest warrant for Zachary Casco. Casco was suspected of committing attempted murder or assault with a deadly weapon. Casco was not in the apartment, but officers located more than 13 ounces of marijuana, $530 in cash, and a digital scale in the apartment's bedroom. The marijuana was packaged in several containers, including pill bottles, mason jars and plastic bags. The apartment contained envelopes addressed to appellant and to Valentin Chapa at the Seine address.

Detective Devin Vanderlaan[3] testified as a narcotics expert. In response to a hypothetical question based on the prosecution evidence, Vanderlaan opined that the marijuana recovered from the Seine Avenue apartment was possessed for the purpose of sale. He based his opinion on several factors, including the amount recovered, which far exceeded the amount typically possessed for personal use, the absence of paraphernalia for ingestion at the location, and the presence of a digital scale.

---

[3] Vanderlaan and the other detectives mentioned in this case are members of the Los Angeles County Sheriff's Office.

2

*Gang Evidence*

Detective Ivania Farias testified as the prosecution gang expert. As a gang detective in the Operation Safe Streets Bureau for four years, Farias routinely investigated gang cases and contacted and interviewed gang members in the field. She focused on the Carmelas gang in Lakewood, among others. Carmelas has approximately 110 documented members, including about 30 to 35 active members. Appellant is an active Carmelas gang member. Farias had four to five contacts with him before November 16, 2012. On each occasion, he admitted his membership in the "Carmelas Varrio Locos." He uses "Tigre" as his moniker and has multiple Carmelas tattoos on his neck and back.

Appellant's Seine Avenue apartment is in a building which is known to be used by Carmelas members. Farias testified that it is outside their gang territory, but it is not unusual for gangs to store contraband outside their territory. Casco, the suspect and subject of the above-mentioned arrest warrant, is a Carmelas member. He had been seen with appellant at the Seine Avenue location.

Farias testified that Carmelas members "involve[d] themselves" in various crimes, including "[m]urder, attempted murder, possession for sales, attempted murder on police officers, gun possessions, sales of methamphetamine, sales of heroin, robberies" and "[s]ales of marijuana." The prosecution presented evidence of the Carmelas gang members' convictions as predicate offenses. Leonel Santiago, a self- admitted Carmelas member was convicted of two counts of second degree robbery in December, 2010. In August 2010, Carmelas gang member Albert Palacios was convicted of unlawful possession of a firearm (Former § 12021, subd. (a)(1)).

Farias also testified about an investigation of four attempted murders that occurred in January, 2013, and led to the arrest of Carmelas member Manuel Guardado. Farias learned that shortly after committing the crimes, Guardado contacted appellant, and appellant rented him a motel room in Long Beach. The charges against Guardado were pending at the time of trial.

Appellant's cousin and codefendant, Chapa, belongs to the Street Villains gang. Chapa, however, associates with the Carmelas street gang. Detective Richard Torres testified that on November 15, 2012, Chapa told him that he was associated with the Carmelas gang, whose members include Chapa's friends and relatives. Farias saw Chapa with appellant in 2011.

Farias opined that the possession of narcotics for sale would benefit a criminal street gang. Gangs "profit from the narcotics they sell" and use the profits to purchase weapons and narcotics; to rent cars that are used in crimes; and to rent motel rooms to help gang members avoid detection by law officers.

Farias also testified that the Carmelas, the Street Villains, and other local Hispanic street gangs in Southern California are affiliated with, and subordinate to, the much larger Mexican Mafia gang. Thus, a portion of the money earned from narcotics sales is sent to the Mexican Mafia as a "tax." The Mexican Mafia can "green light" a local street gang that defaults on its "tax" obligation, which allows any other Mexican Mafia-affiliated gang to commit violent acts against the defaulting gang.

*Defense Evidence*

The parties stipulated that a licensed California physician issued a letter of recommendation authorizing Chapa to use medical marijuana from August 28, 2012 to August 28, 2013. They further stipulated that a licensed medical marijuana user cannot sell marijuana, and that Chapa was authorized to possess less than eight ounces of marijuana and cultivate twelve plants. William Britt, a medical marijuana expert, testified that a patient with a letter of recommendation can possess and cultivate as many ounces of marijuana "as needed."

DISCUSSION

*Substantial Evidence Claims Primary*

*Activities of the Carmelas Gang*

Appellant contends there is not sufficient the evidence to support the active gang participation offense (§ 186.22, subd. (a)), or the gang benefit enhancement (§ 186.22, subd. (b)(1)), because the prosecution failed to show that the

4

gang's "primary activities" qualify it as a "criminal street gang" as defined in section 186.22, subdivision (f). We disagree.

To qualify as a criminal street gang, a gang must have "as one of its primary activities the commission of one or more" statutorily enumerated crimes. (§ 186.22, subd. (f).) The attempted commission of statutorily enumerated crimes also satisfies the "'primary activities'" requirement. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1227-1228 & fn. 16.) The enumerated crimes include assault with a deadly weapon, robbery, unlawful homicide or manslaughter, the sale or possession for sale of controlled substances, and specified weapon possession offenses. (§ 186.22, subd. (e)(1)-(4), (23), (31), (32).)

"Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony, as occurred in [*People v. Gardeley* (1996)] 14 Cal.4th 605." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324.) In *Gardeley*, the primary activities "requirement was satisfied by the testimony of a police gang expert who expressed his opinion that the primary activities of the group in question were drug dealing and witness intimidation, both statutorily listed crimes. [Citation.]" (*Id.*, at p. 322.) "The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies. [Citation.]" (*Id.*, at p. 324.)

In claiming the prosecution failed to prove that the Carmelas gang's primary activities consisted of criminal activity listed in the gang statute, appellant stresses that the expert testimony omitted the word "primary" in describing their activities. This claim is insubstantial. Farias testified that Carmelas members were involved in "[m]urder, attempted murder, possession for sales, attempted murder on police officers, gun possessions, sales of methamphetamine, sales of heroin, [and] robberies" and "[s]ales of marijuana." The prosecution presented documentary

5

evidence of Carmelas gang members' convictions of specific robbery and unlawful weapon possession offenses. Several witnesses testified about the current possession for sales of marijuana offense. Farias also testified about investigations of four attempted murders by Carmelas member Guardado and an assault with a deadly weapon or attempted murder by Carmelas member Casco. In instructing the jury, the trial court listed the crimes of murder, attempted murder, assault with a deadly weapon, possession of deadly weapons, robbery, and sale of controlled substances. Such evidence supports the reasonable inference that Farias's testimony described the gang's primary activities.

Citing *In re Alexander L.* (2007) 149 Cal.App.4th 605, 611, appellant makes a related claim that Farias' testimony about the Carmelas gang's primary activities lacked an adequate foundation. We disagree. The prosecution in *Alexander L.* did not elicit any specifics as to the circumstances of the gang's crimes, or where, when, or how the gang expert had obtained the information. (*Id.*, at pp. 611-612.) In contrast, the prosecution elicited detailed information regarding the circumstances and sources of the expert's information about the Carmelas gang activity. (*People v. Sengpadychith*, *supra*, 26 Cal.4th at pp. 322, 324.)

*Section 186.22, Subdivision (a) Violation*

Citing *People v. Rodriguez* (2012) 55 Cal.4th 1125, appellant further argues there is not substantial evidence that he violated section 186.22, subdivision (a) because he did not possess marijuana for sale with another Carmelas gang member, or aid and abet, another Carmelas member in possessing it for sale. We disagree. The *Rodriguez* opinion merely holds that a lone actor cannot violate section 186.22, subdivision (a). (*Id.*, at p. 1139.) Appellant, however, did not act alone. His accomplice was an associate of the Carmelas gang.

"A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22 [subdivision] (a)." (*People v.*

6

*Rodriguez*, *supra*, 55 Cal.4th at p. 1130, citing §186.22, subd. (i).)[4] There is substantial evidence that Chapa was associated with and actively participated with the Carmelas gang, and possessed marijuana for sale with appellant, an admitted Carmelas gang member. Chapa told Detective Torres that he associated with Carmelas members, including his friends and relatives. Chapa and appellant each received mail at the Seine Avenue apartment, in a known location for Carmelas members. Chapa was with appellant, in their apartment on November 16, when officers located marijuana in the bedroom. The marijuana was packaged in bags and multiple jars, in a collective amount exceeding that authorized by a medical marijuana certificate, or the amount typically possessed for personal use. The apartment contained no paraphernalia for consuming the marijuana, but did contain a digital scale. Appellant and Chapa were unemployed, but the officers found more than $530 in cash in the bedroom. The record contains sufficient evidence to support the jury's finding that appellant participated in criminal activity with Chapa, an associate of appellant's gang.

*The Gang Benefit Enhancement*

Appellant contends there is not sufficient evidence to support the true finding on the section 186.22, subdivision (b)(1) criminal street gang benefit enhancement. We disagree.

To establish a section 186.22, subdivision (b)(1) gang enhancement allegation, "'the prosecution must prove that the crime for which the defendant was convicted had been "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."' [Citations.]" (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411.) "There is rarely direct evidence that a crime was committed for the benefit of a gang. For this reason, 'we routinely draw inferences

[4] Section 186.22, subdivision (i) provides as follows: "In order to secure a conviction . . . pursuant to subdivision (a), it is not necessary for the prosecution to prove that the person devotes all, or a substantial part, of his or her time or efforts to the criminal street gang, nor is it necessary to prove that the person is a member of the criminal street gang. Active participation in the criminal street gang is all that is required."

7

about intent from the predictable results of action. We cannot look into people's minds directly to see their purposes. We can discover mental state only from how people act and what they say.' [Citation.]" (*Id*., at pp. 411-412.)

Appellant claims there is not sufficient evidence to support the gang benefit enhancement because "there was no evidence that the profits from any drug sales was actually going to any gang, or being used to buy guns, or narcotics, or to rent hotel rooms or cars or being given to other gang members." The record belies his claim. On November 16, 2012, appellant was in the Seine Avenue apartment which contained about 13 ounces of marijuana. He was unemployed, and he admitted he knew other people were selling marijuana from the Seine Avenue apartment, and said he would take money, if other people gave it to him. In January 2013, appellant rented a motel room for a fellow Carmelas member, Guardado, in Long Beach, after Guardado committed four attempted murders. Such evidence supports the inference that appellant possessed the marijuana for sale for the benefit of the Carmelas gang, and with the specific intent of promoting and furthering criminal conduct by its members.[5]

*Lesser Included Offense Instruction*

Appellant asserts the trial court erred prejudicially in failing to instruct the jury sua sponte on simple possession of marijuana (Health & Saf. Code, §11357, subd. (c)) as a lesser included offense of possession of marijuana for sale (Health & Saf. Code, § 11359.) We disagree.

---

[5] Appellant also argues that the Mexican Mafia evidence was not sufficient to support the gang participation offense and the enhancement on the theory that he and his accomplice both belonged to the local gangs that were affiliated with the Mexican Mafia, and were thus part of the same larger "umbrella" street gang. Because appellant's accomplice is associated with the Carmelas gang, we need not address whether the Mexican Mafia evidence supports the gang participation offense or enhancement. We note that our Supreme Court recently issued an opinion in which the prosecution presented evidence concerning local gangs described as subsets of a larger "umbrella" gang. (See *People v. Prunty* (2015) 62 Cal.4th 59.)

Possession of marijuana is a lesser included offense of possession of marijuana for sale. (*People v. Walker* (2015) 237 Cal.App.4th 111.) A trial court must instruct the jury, sua sponte, on such an uncharged, lesser-included offense if there is substantial evidence absolving the defendant of the greater offense but not of the lesser. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) The trial court does not have a duty to instruct on a lesser included offense if there is no substantial evidence in support of it. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) There is no such duty where, as here, the evidence shows that if the defendant is guilty, he is guilty of the greater offense. (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.) Appellant told Detective Torres that he did not smoke marijuana. His defense was that he neither possessed nor used marijuana, and that the seized marijuana belonged to Chapa, who possessed it for his personal use. Even if the court had erred by failing to instruct the jury on simple possession of marijuana, the error would be harmless because it is not reasonably probable the jury would have found appellant guilty of only the lesser offense. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Breverman* (1998) 19 Cal.4th 145, 165 [failure to instruct on lesser included offense in noncapital cases is subject to *Watson* harmless error standard of review].)

*Sentencing Issues*

Prior to sentencing, appellant admitted that he had suffered a prior serious felony conviction that qualified as a strike, as alleged in the information. (§§ 667, subds. (a)-(i), 1170.12, subds. (a)-(d )). The trial court sentenced him to an aggregate term of nine years in prison, including four years for the count 1 possession of marijuana for sale (a two-year middle term, doubled), and a five-year serious felony enhancement pursuant to section 667, subdivision (a). The court also imposed a two-year middle term for active participation in a criminal street gang (count 2), to be served concurrently with the count 1 term, and struck the gang benefit enhancement which was attached to count 1.

9

*Section 667, subdivision (a) Serious Felony Enhancement*

Appellant contends that the trial court erred by imposing a section 667, subdivision (a) serious felony enhancement for his prior. We disagree.

Because the jury found the gang benefit enhancement true as to his possession of marijuana for the purpose of sale, that offense qualified as a "serious felony," under section 1192.7, subdivision (c)(28).[6] Pursuant to section 667, subdivision (a), the court imposed a mandatory, consecutive five-year enhancement for appellant's prior serious felony conviction.[7]

Appellant argues that *People v. Briceno*, *supra*, 34 Cal.4th 451 precludes using the gang benefit enhancement (§ 186, subd. (b)(1)) both to elevate his current possession of marijuana for sale conviction to a serious felony (§ 1192.7, subd. (c)(28)), and also to impose a prior serious felony enhancement (§ 667, subd. (a)) We disagree. *Briceno* did not concern the imposition of a serious felony enhancement, let alone bar its imposition. The only provisions at issue in *Briceno* were enacted through a single initiative (Proposition 21) and all pertained to criminal street gangs. (*People v. Jones* (2009) 47 Cal.4th 566, 575.)

*Section 654*

Section 654 prohibits punishment for both the crime of participation in a criminal street gang and a substantive crime when both crimes are based upon the

---

[6] Section 1192.7, subdivision (c)(28) defines "serious felony" as "any felony offense, which would also constitute a felony violation of section 186.22." As interpreted by our supreme court, "section 1192.7 [subdivision] (c)(28) includes within its ambit any felony offense committed for the benefit of a criminal street gang under the section 186.22 [subdivision] (b)(1) gang sentence enhancement." (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

[7] Section 667, subdivision (a)(1) provides in relevant part: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

same act.  (*People v. Mesa* (2012) 54 Cal.4th 191, 200.)  The parties agree that the trial court should have stayed appellant's sentence for the count 2 active participation in a criminal street gang.

## DISPOSITION

We modify the judgment to stay the two-year sentence for count 2.  The superior court clerk is directed to prepare an amended abstract of judgment which accurately reflects the modified judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.  In all other respects, we affirm the judgment.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.




11

Michael A. Cowell, Judge

Superior Court County of Los Angeles

_____

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.