Filed 5/24/16  P. v. Duby CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LOUIS ALLEN DUBY,<br><br>  Defendant and Appellant. | 2d Crim. No. B226439<br>(Super. Ct. No. VA101903)<br>(Los Angeles County) |

Louis Allen Duby appeals a judgment after a jury convicted him of shooting at an occupied vehicle (Pen. Code, § 246[1]), unlawfully driving a vehicle (Veh. Code, § 10851, subd. (a)), evading a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)), assault with a semiautomatic firearm (§ 245, subd. (b)), and assault with a firearm (§ 245, subd. (a)(2)).  The jury also found true allegations that appellant had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and committed all but the evading offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).  The trial court sentenced him to 30 years to life in state prison.  The sentence includes concurrent terms of 17 years for the assault with a semiautomatic firearm (count 6) and

---

[1] All statutory references are to the Penal Code unless otherwise stated.

five years for the assault with a firearm (count 7). Appellant contends the evidence is insufficient to support the gang enhancements. He also contends that the sentences on counts 6 and 7 should have been stayed pursuant to section 654. We agree with the latter contention and order the judgment modified accordingly. Otherwise, we affirm.

STATEMENT OF FACTS

*The Substantive Offenses*

On August 1, 2007, a Los Angeles County Deputy Sheriff was on patrol in Hawaiian Gardens when he heard approximately eight gunshots followed by the sound of cars speeding away. The deputy pulled up to a passing car and recognized the driver as Edward Solorzano, a member of the Varrio Hawaiian Gardens (VHG) criminal street gang. Solorzano appeared to be scared and yelled, "Those fuckers are shooting at me in the white car." Solorzano pointed at a white Pontiac sedan and said, "That's them right there."

Appellant was driving the Pontiac and Steve Valdivia and Gustavo Aquino were his passengers. The deputy activated his overhead lights and appellant sped away. During the ensuing five-mile pursuit, appellant drove approximately 45 miles per hour over the speed limit and ran numerous stop signs and red lights. Appellant, Valdivia, and Aquino were arrested after appellant stopped the car and they all attempted to flee on foot. Appellant and Aquino were taken into custody in front of a nursery. Valdivia ran into the nursery and was apprehended in the yard of a nearby residence.

After waiving his *Miranda*[2] rights, appellant admitted he knew that the Pontiac he was driving had been stolen. When asked if he shot at any VHG gang members earlier that day, he replied, "Don't ask me. You know what happened. I can't say anything else to you. You know what's up."

The police searched the area where Valdivia was apprehended and found a .22 caliber magazine and three rounds of live .22 caliber ammunition. The police also

_____

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

searched the nursery and found a .44 caliber revolver with five spent casings and a .22 caliber sawed-off semiautomatic rifle with one live round in its chamber. Genetic material recovered from the revolver matched appellant's DNA profile with a random probability match of one in 494 individuals. Gunshot residue was also found inside the Pontiac.

Solorzano was interviewed by Detective Brandt House. Solorzano told the detective he was driving in Hawaiian Gardens that night when a car started following him. He heard eight gunshots and sped away. One of the shots hit his car. Solorzano believed that the shooters were from the "other side," i.e., the Chivas and Artesia criminal street gangs, and "that several members of Chivas and Artesia knew either that that was his car, or that it . . . belonged to a member of [the VHG gang]."[3]

*Gang Enhancements*

Detective House testified as the prosecution's gang expert. The detective was familiar with the VHG gang and its primary rivals, the Chivas and Artesia gangs. Appellant and Valdivia were affiliated with the Chivas gang, and Aquino was a member of the gang. Chivas had 130 members and 30 affiliates and its symbols included "C," goats, and goat horns. Chivas also had cliques or subsets that identified themselves as such, e.g., the Chicos and Malos.

The Artesia gang had been in existence since the 1950's and had 160 members and 50 affiliates. Artesia members primarily identified themselves with the letter "A," while some of the cliques or subsets of the gang adopted their own symbols. Chivas and Artesia were originally the same gang and are both affiliated with the Mexican Mafia. House indicated that although they now have separate members and

---

[3] At the preliminary hearing, Solorzano either refused to answer questions or claimed he did not remember what had happened. After he refused to testify at trial on Fifth Amendment grounds, the court allowed Solorzano's preliminary hearing testimony and Detective House's preliminary hearing testimony impeaching Solorzano to be read into the record.

affiliates, claim different territories, and have different identifying symbols, "Chivas and Artesia, for all . . . purposes, should be considered the same gang; there's different stories about how they split into two but for all intents and purposes they should be considered the same."

The Chivas gang earned money by selling methamphetamine, a "great deal of heroin," and marijuana. Selling drugs was "one of the main ways" Chivas raised money and represented "a good deal of their income . . . ." The primary activities of the Artesia gang included murder, assault, theft, and robbery. In August 2004, Artesia member Sal Fernandez was convicted of assault with a firearm. (§ 245, subd. (a)(2).) In July 2007, Chivas gang member Leonardo Delgadillo was convicted for possessing methamphetamine for sale. (Health & Saf. Code, § 11378.)

When asked a hypothetical question based on the facts of the case, Detective House opined that the crimes were committed for the benefit of, at the direction of, or in association with Chivas and Artesia. The crimes benefitted Chivas and Artesia by "strik[ing] fear into the hearts of the members of that rival gang, as well as the citizens that live in that neighborhood. It also increases the status of the individual gang member, as well as the gang collectively." The crimes were committed in association with Chivas because "[w]e have two admitted affiliates of the . . . Chivas criminal street gang; we have one admitted member of the gang." The crimes were also committed at the direction of a gang because "Artesia and Chivas criminal street gangs have standing orders to murder [VHG] gang members whenever they see them or have an opportunity."

DISCUSSION

*Gang Enhancements*

Appellant contends the evidence is insufficient to prove his crimes were committed to benefit a criminal street gang, as provided in subdivision (b)(1) of section 186.22. We disagree.

4

In assessing the sufficiency of evidence to support gang enhancement findings, we review the entire record in the light most favorable to the judgment, to determine whether reasonable and credible evidence exists to support the decision of the trier of fact. (*People v. Young* (2005) 34 Cal.4th 1149, 1180; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) We do not reassess the credibility of witnesses or reweigh the evidence. (*Olguin*, at p. 1382.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient evidence to support'" the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Section 186.22, subdivision (b)(1) increases punishment for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." A "criminal street gang" is defined as a group "of 'three or more persons' who have as one of their 'primary activities the commission of' certain enumerated criminal acts; who share 'a common name or common identifying sign or symbol'; and 'whose members individually or collectively engage in or have engaged in a pattern of criminal activity.'" (*People v. Prunty* (2015) 62 Cal.4th 59, 75 (*Prunty*), quoting section 186.22, subdivision (f).)

Appellant claims the evidence is insufficient to support the gang enhancements because the evidence fails to prove that Chivas and Artesia collectively qualified as a single criminal street gang. He relies on *Prunty*, *supra*, 62 Cal.4th 59, for the proposition that "where the prosecution's case positing the existence of a single 'criminal street gang' for purposes of section 186.22, subdivision (f) turns on the existence and conduct or one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." (*Id.* at p. 71.)

The gang enhancements, however, are not contingent on a finding that Chivas and Artesia qualified as a single gang. Although Detective House testified that Chivas and Artesia "should be considered the same gang," the evidence established that

5

Chivas is itself a criminal street gang and that appellant's crimes were committed for the benefit of, at the direction of, or in association with that gang. This is consistent with *Prunty*, which recognized that "[b]ecause criminal street gangs may vary in size, scope, and degree of informality, the circumstances of a given case may lead the prosecution to seek different ways of establishing that a particular gang meets the requirements of section 186.22(f). *For example, when a defendant commits a crime to benefit a particular subset, and the prosecution can show that the subset in question satisfies the primary activities and predicate offense requirements, there will be no need to link together the activities of various alleged cliques . . . ."* (*Prunty, supra*, 62 Cal.4th 59, 80, italics added.) In making this observation, the court recognized "that many gang-related prosecutions involve the conduct of discrete criminal street gangs and do not turn on the relationship between alleged gang subsets." (*Ibid*.)

Appellant does not dispute there was evidence from which the jury could have found that Chivas is a group of more than 100 individuals who share a common name and identifying symbols, or that members of the gang have engaged in a pattern of criminal activity. He claims, however, that the evidence is insufficient to establish that Chivas's primary activities included one of the offenses enumerated in subdivision (e) of section 186.22. We conclude otherwise.

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*Id.* at p. 324.) Expert testimony may also be sufficient. (*Ibid.*)

Detective House testified that selling heroin and methamphetamine was "one of the main ways" Chivas raised money and that the proceeds of those sales represented "a good deal of their income." The detective also offered proof that, in 2007,

6

a Chivas member had been convicted of possessing methamphetamine for sale in violation of Health and Safety Code section 11378. Although he did not utter the phrase "primary activities," his testimony sufficiently conveyed an opinion that selling drugs was one of the gang's "'chief' or 'principal' occupations." (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 323.) Moreover, the sale and possession for sale of controlled substances are among the crimes enumerated in the gang statute. (§ 186.22(e)(4).) The evidence is thus sufficient to support a finding that Chivas qualified as a criminal street gang. In light of this conclusion, we need not address whether the evidence is sufficient to establish that Chivas and Artesia qualify as a single "criminal street gang" for purposes of section 186.22, subdivision (f).

*Section 654*

Appellant claims the trial court violated section 654 by imposing concurrent sentences on count 6 (assault with a semiautomatic firearm) and count 7 (assault with a firearm). He asserts that the sentences on these counts should have been stayed because he was separately punished for shooting at an occupied vehicle in violation of section 246. The People correctly concede the point.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." When there are multiple convictions for a single act, the court sentences on each count but must stay execution of sentence on the subordinate counts. (*People v. Correa* (2012) 54 Cal.4th 331, 335.) Appellant's convictions for shooting at an unoccupied vehicle, assault with semiautomatic firearm, and assault with a firearm were all based on a single act. Accordingly, the sentences on the two assault counts should have been stayed pursuant to section 654.

7

DISPOSITION

The judgment is modified to reflect that the 17-year sentence imposed on count 6 and the five-year sentence imposed on count 7 are stayed under section 654. The superior court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

8

Robert J. Higa, Judge

Superior Court County of Los Angeles

_____

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Scott A. Taryle, Supervising Deputy Attorney General, for Plaintiff and Respondent.