Filed 5/25/23  P. v. Flores CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KRISTI FLORES,<br><br>Defendant and Appellant. | F083424<br><br>(Super. Ct. No. PCF405495B)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio Reyes, Judge.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri  and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

Appellant Kristi Flores was convicted by jury of two counts of accessory after the fact (Pen. Code,[1] § 32) based upon the single act of concealing a firearm that her husband and codefendant, Johnny Garcia, used to shoot two rival gang members. The jury also found true an enhancement alleging that Flores had committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

Flores raises the following claims on appeal: (1) one of her two convictions for accessory after the fact must be reversed because both counts are based upon the single act of concealing Garcia's firearm; and (2) the jury's true findings on the criminal street gang enhancements must be vacated pursuant to Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333), which was enacted during the pendency of this appeal.

The Attorney General concedes that both claims have merit. We agree as well. We therefore reverse count 11, one of Flores's convictions for accessory after the fact, and vacate the jury's true findings on the criminal street gang enhancements. The matter is remanded back to the lower court for further proceedings.

## PROCEDURAL HISTORY

On June 9, 2021, the Tulare County District Attorney's Office filed a second amended information charging Flores with conspiracy (§ 182.5, counts 8 & 9); accessory after the fact (§ 32, counts 10-12); and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)(1)), count 13.[2] The information further alleged enhancements for the use of a firearm (§§ 12022.53, subds. (b) & (e)(1)); *id*., subds. (c) & (e)(1); *id*., subds. (d) & (e)(1)), an arming enhancement (§ 12022, subd. (a)(1)), and an

---

[1]  All undefined statutory citations are to the Penal Code unless otherwise indicated.

[2]  Counts 1 through 7 of the information applied to Garcia who is not a party to this appeal.

enhancement for the commission of crimes for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)).

On July 30, 2021, following a jury trial, Flores was found guilty of two counts of accessory after the fact (§ 32, counts 10 & 11) and one count of misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a), count 13). As to the two accessory convictions, the jury found true an enhancement alleging that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(a)). The jury found Flores not guilty on all remaining counts and found not true the gun use and arming enhancement allegations.

On October 1, 2021, the trial court sentenced Flores to an aggregate term of five years in state prison, consisting of the midterm of two years for count ten, the first accessory count, plus the midterm of three years for the criminal street gang enhancement. The court imposed the same sentence as to count 11, the second accessory count, but stayed Flores's sentence on this count pursuant to section 654.

Flores filed a timely notice of appeal.

## STATEMENT OF FACTS

*The Underlying Offense*

On November 19, 2020, at approximately 11:00 a.m., officers from the Tulare Police Department responded to an emergency call about a shooting at the Hampton Inn. Following an investigation, officers determined that the following events had transpired:

Garcia and Flores, a married couple from Fresno, were staying at the Hampton Inn in Tulare while on vacation. Garcia is an admitted McKenzie Street Bulldog gang member, which is a subset of the Fresno Bulldogs criminal street gang. Flores has a documented history of associating with gang members, she had previously been involved in gang-related crimes, and she had gang-related tattoos.

At approximately 11:02 a.m., Garcia was working out in the hotel gym when L.A. and G.J. approached the hotel from the parking lot. The parking lot of the hotel is visible through the hotel's gym.

G.J. was wearing a red 49ers tee shirt, and L.A. was wearing a red hat. G.J. was associated with the Northern or Norteño criminal street gang. Garcia signaled Flores to come down from their hotel room by sending her a selfie text message.

Tulare County is considered enemy gang territory for Fresno Bulldog gang members. The Norteños are rivals of the Fresno Bulldogs.

Garcia got into an elevator with L.A. and G.C., pulled out a gun, and shot them both. When the elevator doors opened, Garcia chased G.J. until G.J. was able to escape to safety. Garcia appeared to have a heavy object swinging in his pocket as he ran, and he was holding unidentified objects in his left hand. L.A. ran into the hallway of the hotel.

Shortly thereafter, Garcia ran back inside the lobby of the hotel holding a gray sweater and an unknown object. Once inside, he walked calmly back to the elevators where he met Flores. Garcia and Flores rode up in the elevators together.

Two or three minutes after the shooting, hotel surveillance video depicted Flores leaving the hotel carrying her purse and a plastic bag. Flores walked through the back of the hotel, around the pool, and to her car. A few minutes later, she drove away.

Police found a spent shell case along the same route taken by Flores. No bullet casings were found in the elevator where the shooting occurred.

Flores later returned to the hotel to collect her belongings. Investigating officers searched her vehicle and found the gray sweater that Garcia appeared to be holding shortly after the shooting. Subsequent testing showed that the sweater had gunshot residue particles on it. Following her arrest, police searched Flores's person and found a glass pipe commonly used for smoking methamphetamine in her bra.

4.

The shell casing found along the path taken by Flores, a bullet fragment recovered from G.J.'s shoulder, as well as a mushroom bullet lodged in the interior of the hotel, could all have been fired from the same gun. The gun used in the shooting was never recovered.

### The Gang Evidence

Parlier Police Sergeant Jesse Ruelas testified as an expert regarding the Fresno Bulldogs criminal street gang. Sergeant Ruelas had 25 years of experience as a police officer and had worked in the Multi Agency Gang Enforcement Consortium (MAGEC) at the Fresno Police Department for 11 years.

According to Sergeant Ruelas, there are approximately 6,000 known Bulldog gang members in Fresno County, and 8,000 to 10,000 associates of the gang. The Fresno Bulldogs are comprised of various subsets, including East Side Fresno (ESF), which is the largest subset. McKenzie Street, Lewis Street, Daisy Park, Varrio Fifth Street, and Varrio Taco Flats are Bulldog subsets that operate under the umbrella of ESF. While Bulldog subsets generally claim territory to specific parks or streets, they are all Bulldogs.

Sergeant Ruelas explained that the Fresno Bulldogs are unique in that there is no established hierarchy within the gang and its individual members operate by status rather than rank. Although the Norteños are considered rivals of the Fresno Bulldogs, the Bulldogs fight with everybody. The subsets even occasionally fight with one another.

Based upon his experience, Sergeant Ruelas opined that the primary activities of the Fresno Bulldogs include murder, assault with a deadly weapon, battery with great bodily injury, witness intimidation, arson, vehicle theft, burglary, pimping, prostitution, and human trafficking. With respect to the McKenzie Street Bulldogs, the prosecutor adduced evidence of specific examples of McKenzie Street Bulldog gang members who had committed the crimes of carjacking, illegal possession of firearms, and vehicle theft.

5.

To show that the Fresno Bulldogs have committed a "pattern of criminal gang activity" (see § 186.22, subd. (a)), the prosecutor relied upon the current offenses charged against Garcia and adduced evidence of prior crimes committed by Fresno Bulldog, Lewis Street Bulldog, or McKenzie Street Bulldog gang members. Officers with personal knowledge of these incidents offered testimony establishing the following facts:

On December 3, 2017, Louie Anthony Valdez, Destiny Unique Cancino Rico, her husband, Fernandez Gonzales Cancino, and Victor C., traveled from Fresno to a home in Tulare County and stole firearms from a residence for purposes of firearms trafficking. Rico is a self-admitted Fresno Bulldog gang member. In 2014, Rico, also known by the gang moniker of "Baby Dreamer," had beaten and robbed another girl of her clothing while yelling out "Bulldogs."

Valdez claimed membership to the Lewis Street Bulldogs. Certified copies of Valdez and Destiny Rico's convictions show they were convicted of first degree burglary with a criminal street gang enhancement.

On August 17, 2018, following a traffic stop, Martin Blancas Contreras was found to be in possession of a concealed firearm. Officers also found methamphetamine on his person and in his vehicle. Contreras had multiple tattoos on his body and his face associated with the Fresno Bulldogs in general, as well as tattoos specific to the McKenzie Street Bulldogs subset, including "624" and "MSD." The grip of his firearm handle was red, a color commonly associated with the McKenzie Street Bulldogs.

Detective Christopher Martinez, who was assigned to MAGEC at the time of the traffic stop, was tasked with identifying members of the McKenzie Street Bulldogs. He opined that Contreras was a McKenzie Street Bulldog.

Contreras ultimately plead no contest to carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(3)). He also admitted the charged allegation of being an active participant in a criminal street gang (§ 25400, subd. (c)(3)). A certified copy of Contreras's conviction was admitted into evidence.

6.

Based upon various indicia, Sergeant Ruelas opined that Flores and Garcia are active Fresno Bulldog and McKenzie Street Bulldog gang members.[3] He opined that Flores has been a member of the McKenzie Street Bulldogs specifically since she married or began associating with Garcia.

Assuming a hypothetical mirroring the facts of the instant case, Sergeant Ruelas further opined that Flores had acted in association with the McKenzie Street Bulldogs, with the specific intent to promote, further, or assist in criminal conduct by gang members. Sergeant Ruelas explained that Flores was acting in association with the gang by getting rid of evidence for her husband, another known member of the gang. According to Sergeant Ruelas, Flores would also benefit reputationally from concealing Garcia's firearm. He explained that Flores's willingness to take the gun and hide it from law enforcement to protect her husband, another member of the gang, would bolster her reputation within the gang.

Further, according to Sergeant Ruelas, the fact that Garcia committed a violent crime in broad daylight in addition to his demonstrated unwillingness to back down was consistent with the Fresno Bulldogs, who are known to fight everybody. Sergeant Ruelas opined that Garcia would benefit reputationally from his attempt to kill two rival gang members because his crimes would elevate his status within the gang, which like the Bulldog breed of canines, has a reputation for violence.

### Officer Michal Elliott

Visalia Police Officer Michael Elliott also testified as an expert regarding the Fresno Bulldogs. Officer Elliott worked on a gang suppression and a special enforcement unit for six years. He had also personally investigated the burglary committed by Valdez,

---

[3] Flores does not challenge the sufficiency of the evidence supporting the gang expert's opinion that she is an active McKenzie Street Bulldog and a Fresno Bulldog gang member. We therefore do not recite the facts supporting Sergeant Ruelas's opinion.

Destiny Cancino, and two others, and had testified as a gang expert in Cancino's criminal case.

Officer Elliott explained that members of the Fresno Bulldog identify with the gang by wearing Fresno State clothing, by wearing red and blue, and with specific tattoos, including, the Fresno State University Bulldog face, dog paws, dog collars, the letters "B" and "D", and the numbers "2" and "4." Officer Elliott explained that some of the Bulldog subsets allow members from other subsets of the same gang to have safe passage on their turf. Accordingly, a Chancla Bulldog, a Callohill Bulldog, a McKenzie Street Bulldog, or a Lewis Street Bulldog can travel safety throughout Fresno without being harassed by other Bulldogs because these subsets are allied.

## DISCUSSION

### I. Flores's Accessory After the Fact Convictions

Flores was convicted of two counts of accessory after the fact based upon the single act of hiding Garcia's gun after the shooting. She contends, and the Attorney General agrees, that one of her convictions for accessory after the fact must be reversed. We agree as well. We will therefore reverse Flores's conviction on count 11, Flores's second conviction for accessory after the fact which was stayed pursuant to section 654.

#### A. Background

Flores was charged with three counts of being an accessory to a felony. According to the prosecutor, Flores's act of hiding Garcia's firearm assisted him in several crimes, thereby supporting multiple accessory charges. During her comments in closing argument, the prosecutor explained:

> "[THE PROSECUTOR]: [Flores] is charged with accessory after the fact to attempted murder. And that's Count 10 for her having gotten rid of the firearm after the attempted murder of [L.A.] She is an accessory after the fact to the attempted murder, and for Count 11 an accessory after the fact to the attempted murder of [G.J.] And that is under Penal

8.

Code Section 32. And we went over what that entails. [¶] So, by her helping [Garcia], she is an accessory after the fact. She is also an accessory after the fact to a prohibited person being in possession of a firearm.

"So she, as long as she knows that she is getting rid of a firearm, and that someone is not supposed to have it, then she is an accessory after the fact to a prohibited person in possession of a firearm. [¶] That was her husband. She knew of his past. He testified here even about his past and that he couldn't have a gun. And so, by her harboring or concealing that weapon, she is aiding the perpetrator and she is guilty of accessory after the fact to prohibited person in possession of a firearm."

## B. Analysis

The Attorney General concedes that one of Flores's accessory convictions must be reversed. He contends that *People v. Perryman* (1987) 188 Cal.App.3d 1546 is instructive.

In *People v. Perryman*, the defendant was convicted of one count of being an accessory to a felony (§ 32) after she observed her codefendant commit attempted robbery and assault. (*People v. Perryman, supra,* 188 Cal.App.3d at pp. 1547-1548.) On appeal, the court rejected the defendant's claim that a unanimity instruction was required below, explaining: "[t]he number of underlying felonies is not determinative of defendant's guilt. Even if the defendant knew the principal committed more than one crime in a single transaction, he may be charged with only one act of being an accessory after the fact." (*Id.* at p. 1549.)

By concealing Garcia's firearm, Flores, an accessory, committed only one violation of section 32. This is so regardless of how many crimes Garcia had committed. We will therefore reverse Flores's conviction on count 11, as well as the gang enhancement attached to this count.

9.

## II.  AB 333 and the Remaining Gang Enhancement

Flores contends the gang enhancements attached to her convictions must be vacated following AB 333's amendments to section 186.22.  The Attorney General concedes that AB 333 retroactively applies (see *People v. Tran* (2022) 13 Cal.5th 1169, 1206-1207), and that the gang enhancements must be vacated because the jury was permitted to find the enhancements true based upon the theory that Flores's crime would benefit her, and by implication, the Fresno Bulldogs reputationally.

We agree with the parties.  Subdivision (g) of section 186.22, added by the enactment of AB 333, defines "to benefit, promote, further, or assist" throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational."  Following AB 333, the fact that a crime benefits a putative criminal street gang reputationally is therefore insufficient to support a gang enhancement under section 186.22.

We further observe that the jury was permitted to consider the currently charged offenses committed by Garcia as one of the predicate offenses demonstrating a "pattern of criminal gang activity" by the Fresno Bulldogs, a prerequisite to proving the existence of the gang under subdivision (a) of section 186.22.  Following the enactment of AB 333, the offense with which the defendant is currently charged cannot be used as one of the two required predicate offenses.  (See § 186.22, subd. (e)(2).)

As discussed further below, these errors are not harmless.  We will therefore reverse the remaining gang enhancement attached to count 10.

### A.  AB 333

AB 333 was signed into law at a regular session of the Legislature and therefore went into effect on January 1, 2022.  (Cal. Const., art. IV, § 8; Gov. Code, § 9600, subd. (a).)  AB 333 amended section 186.22 in multiple aspects.

First, it amended the definition of a " 'criminal street gang,' " requiring proof that the gang is an organized association, whose members *collectively* engage in, or have

engaged in, a pattern of criminal activity (§ 186.22, subd. (f)). AB 333 deleted the word "individually" from this phrase (see § 186.22, former subd. (f)), resulting in a split of authority among appellate courts as to whether the statute now requires the prosecution to prove that two or more gang members committed each predicate offense. (Compare *People v. Delgado* (2022) 74 Cal.App.5th 1067 with *People v. Clark* (2022) 81 Cal.App.5th 133, review granted Oct. 19, 2022, S275746). This issue is currently pending review in our Supreme Court.[4]

Second, it amended the definition of what constitutes a " 'pattern of criminal gang activity' " (§ 186.22, subd. (e)(1)) by requiring the last offense to have occurred within three years of the date the current offense and requires that the offenses commonly benefit a criminal street gang in a manner that is more than reputational. (*Ibid.*) AB 333 also prohibits use of the currently charged offense to establish a pattern of criminal gang activity (see § 186.22, subd. (e)(2)). Under the former law, the charged offense could be used as one of the two required predicate offenses. (See *People v. Gardeley* (1996) 14 Cal.4th 605, 625.)

Third, AB 333 narrowed the list of crimes that may be used to establish a pattern of criminal gang activity. Section 186.22, subdivision (e)(1), was amended to remove vandalism, looting, and a number of fraud-related offenses from the crimes that may be used as predicate offenses. (Compare § 186.22, former subd. (e)(1)-(33) with § 186.22, subd. (e)(1)(A)-(Z)).

---

[4] Our Supreme Court granted review in *People v. Clark*, *supra*, 81 Cal.App.5th 133 as to the following issue: "Can the People meet their burden of establishing a 'pattern of criminal gang activity' under Penal Code section 186.22 as amended by Assembly Bill No. 333 (Stats. 2021, ch. 699) by presenting evidence of individual gang members committing separate predicate offenses, or must the People provide evidence of two or more gang members working in concert with each other during each predicate offense?" (*People v. Clark*, S275746, Supreme Ct. Mins., Oct. 19, 2022.)

Fourth, section 186.22 now defines "to benefit, promote, further, or assist" as this phrase appears throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (*Id*., subd. (g).) Thus, "[t]o prove that a defendant committed a felony 'for the benefit of, at the direction of, or in association with a criminal street gang,' (§ 186.22, subd. (b)(1)), the new law requires the prosecution to show that 'the common benefit [to the gang] is more than reputational.' " (*People v. Sek* (2022) 74 Cal.App.5th 657, 667.) "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

Finally, AB 333 added section 1109 to the Penal Code, requiring bifurcation of gang enhancements charged under section 186.22, subdivision (b) or (d) to be tried separately from the underlying charges upon request by the defense. (Stats. 2021, ch. 699, § 5.) Section 1109 also requires the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)) to be tried separately from all other counts that do not require gang evidence as an element of the crime.

## B. Analysis

Sergeant Ruelas opined that Flores and Garcia are active members of the Fresno Bulldogs and the McKenzie Street Bulldogs. Assuming a hypothetical mirroring the facts of the instant case, Sergeant Ruelas further opined that Flores had acted in association with the gang by hiding Garcia's firearm, and that she had benefited reputationally from her crime.

Sergeant Ruelas did not directly opine that the Fresno Bulldogs would benefit from Flores's crime. However, based upon his explanation of how the gang operates, including its reputation for violence and its members' willingness to fight anyone, the jury could reasonably conclude that Flores's crime would bolster the Fresno Bulldog's

12.

reputation, thereby benefiting the gang. Following the enactment of AB 333, however, a reputational benefit is no longer sufficient to support a criminal street gang enhancement. (See § 186.22, subd. (g) ["to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational"].)

The record also shows the prosecutor used the commission of the current offense by Garcia as one of the predicate offenses required to establish a pattern of criminal gang activity by the Fresno Bulldogs. Although this was permitted at the time of Flores's trial (see *People v. Loeun* (1997) 17 Cal.4th 1, 10), AB 333 precludes use of the currently charged offense as one of the predicate offenses. (See § 186.22, subd. (e)(2).) Thus, the jury's findings on the gang enhancements do not comport with the heightened evidentiary requirements established through the enactment of AB 333.

Although Flores identifies other ways in which the evidence adduced at trial fails to comply with the requirements of AB 333, we need not address her assertions. "When jury instructions are deficient for omitting an element of an offense, they implicate the defendant's federal constitutional rights, and we review for harmless error under the strict standard of *Chapman v. California* (1967) 386 U.S. 18." (*People v. Sek, supra,* 74 Cal.App.5th at p. 668.) This standard applies "where the new element to the offense is introduced through the retroactive application of a new law." (*Ibid.*) "Under the *Chapman* standard, reversal is required unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (*Ibid.*, citing *People v. Flood* (1998) 18 Cal.4th 470, 504.)

We are unable to conclude, with the level of certainty required by *Chapman*, that the errors identified did not contribute to the jury's verdict. We do not know which predicate offenses the jury relied upon to find that the Fresno Bulldogs are a criminal street gang within the meaning of section 186.22. Moreover, one of the theories upon which the criminal street gang enhancement allegations were based was the fact that

13.

Flores's crimes benefited the Fresno Bulldogs reputationally. In finding the gang enhancements true, the jury may have relied upon this now prohibited theory. We therefore accept the parties' assertion that the jury's true findings on the remaining gang enhancement attached to count 10 must be vacated.

### III. Retrial of the Gang Enhancement

The Attorney General submits that the prosecutor should be permitted to retry the criminal street gang enhancement because the enhancement was proven by substantial evidence under the law as it existed at the time of Flores's criminal trial. Flores concedes that retrial of the gang enhancements is the appropriate remedy.

Following our independent review of the record, we conclude that the prosecutor adduced sufficient evidence to support the jury's true finding on the gang enhancements under then-existing law. The gang enhancement attached to count 10 may therefore be retried, upon the prosecutor's election.

#### A. Standard of Review

"We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction." (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) " 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Perez* (2010) 50 Cal.4th 222, 229; *People v. McCurdy* (2014) 59 Cal.4th 1063, 1104; *People v. Rountree* (2013) 56 Cal.4th 823, 852-853.)

#### B. The Existence of the Fresno Bulldogs Street Gang

Prior to the enactment of AB 333, section 186.22 defined a " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons ... having as one of its primary activities the commission of one or more [enumerated

14.

criminal acts], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, former subd. (f); Stats. 2017, ch. 561, § 178.)

Although the prosecutor and the witnesses often referred to the Fresno Bulldogs and the McKenzie Street Bulldogs interchangeably, the prosecutor ultimately argued that Garcia and Flores had acted in association with and for the benefit of the Fresno Bulldogs. For the reasons discussed below, we agree with the parties' implied assertion that substantial evidence supports the existence of the Fresno Bulldogs under the definition set forth in former subdivision (f) of section 186.22.

### i. The Primary Activities

To establish a gang's primary activities, the trier of fact may look to both the past and present criminal activities of the gang. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*Id.* at p. 324.) Expert testimony based on an adequate factual foundation might also be sufficient. (*Ibid.*)

Sergeant Ruelas testified that the primary activities of the Fresno Bulldogs include: murder, assault with a deadly weapon, battery with great bodily injury, witness intimidation, arson, vehicle theft, burglary, fraud, pimping, prostitution, and human trafficking. Sergeant Ruelas's opinion, which was drawn from his considerable training and experience, was sufficient to establish the primary activities of the Fresno Bulldogs. (See *People v. Sengpadychith, supra,* 26 Cal.4th at p. 324 [expert testimony may be sufficient to establish gang's primary activities consist of criminal activity listed in gang statute].)

### ii. The Predicate Offenses

To establish a "pattern of criminal gang activity," the prosecution needed to prove only that those associated with the gang committed two or more predicate offenses within

a period of three years and that the offenses were committed on separate occasions, or by two or more persons on the same occasion. (§ 186.22, former subd. (e); *Menifee v. Superior Court* (2020) 57 Cal.App.5th 343, 362.) These so-called "predicate offenses" could be established by evidence of the charged offense, and, in most cases, it was unnecessary to prove that the predicate offenses were gang related. (*Menifee v. Superior Court*, *supra*, 57 Cal.App.5th. at p. 362; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822; *People v. Garcia* (2020) 46 Cal.App.5th 123, 165.)

In the case at bench, Garcia's crime of attempting to kill two perceived rival gang members, constitutes evidence of one qualifying predicate under the law as it existed at the time of Flores and Garcia's trial. (See *People v. Tran*, *supra*, 51 Cal.4th at p. 1046 ["a predicate offense may be established by evidence of the charged offense"]; § 186.22, former subd. (e)(3).) The circumstances of the crime also support the conclusion that Garcia's crime was gang related. (See *People v. Gardeley, supra,* 14 Cal.4th at p. 624, fn. 12 ["whenever the prosecution relies on the charged offense to establish one of the 'two or more' offenses necessary to show a pattern of criminal gang activity (§ 186.22, subd. (e)), the prosecution must prove that the [charged] offense was gang related"], disapproved of on other grounds by *People v. Sanchez* (2016) 63 Cal.4th 665.)

Contreras's 2018 crime of illegally possessing a firearm in a vehicle while being an active member in a criminal street gang constitutes evidence of a second predicate offense. (See § 186.22, former subd. (e)(32).) Detective Martinez, who had investigated Contreras's crime, opined that Contreras is a McKenzie Street Bulldog. Detective Martinez, who had extensive experience with the McKenzie Street Bulldogs, based his opinion upon facts which he had personally observed, most significantly, the presence of multiple tattoos on Contreras that are unique to the McKenzie Street Bulldogs, and the fact that Contreras's firearm handle was red, a color commonly used by McKenzie Street Bulldogs. Contreras also had tattoos common among members of the Fresno Bulldogs,

supporting the conclusion that he also claimed membership to the overarching Bulldog gang.

With respect to the third predicate, a 2017 burglary, the prosecutor adduced evidence showing that Rico was a member of the overarching Fresno Bulldogs, and that Valdez was a member of the Lewis Street Bulldogs subset. Although not entirely clear from the record, Rico may also have claimed membership to the Lewis Street Bulldog subset.

Evidence adduced at Flores's trial shows that although Fresno Bulldog gang members claim generally territories affiliated with specific neighborhoods, streets, or parks, they are all members of the overarching Fresno Bulldog gang. The record does not show that all Fresno Bulldogs belong to subsets *exclusively*. (See, e.g., *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1035 ["an individual's gang membership may take one of several forms. The individual may (1) only be a member of a subset; (2) only be a member of an umbrella gang; or (3) be a member of both a subset and an umbrella gang"].) Rico's conviction therefore qualifies as evidence of a third predicate offense.[5] Based upon the foregoing, we conclude that the prosecutor adduced substantial evidence showing that the Fresno Bulldogs are a criminal street gang within the definition set forth under former subdivision (f) of section 186.22.

---

**5** With respect to Valdez's conviction, the record shows that he claimed membership to the Lewis Street Bulldogs specifically. Flores does not challenge the sufficiency of the evidence supporting the gang enhancements under our Supreme Court's decision in *People v. Prunty* (2015) 62 Cal.4th 59. There, our Supreme Court held that "[w]here the prosecution's case positing the existence of a single 'criminal street gang' for purposes of section 186.22[, subdivision] (f) turns on the existence and conduct of one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." (*Id*. at p. 71.) Because the prosecutor adduced evidence of at least two qualifying predicate offenses, we need not determine whether the record shows that the Lewis Street Bulldogs are organizationally connected to the McKenzie Street Bulldogs and the overarching Fresno Bulldogs.

## C. Evidence Showing Flores's Crimes Were Committed in Association With or For the Benefit of the Fresno Bulldogs

"There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1). [Citation.] The first prong requires that the prosecution prove the underlying felony was 'gang related.' " (*People v. Weddington* (2016) 246 Cal.App.4th 468, 484.) To prove that the crime is gang related, the prosecution may establish the crime was committed "(1) for the benefit of a gang; (2) at the direction of a gang; *or* (3) in association with a gang." (*Ibid.*) "The first prong … may be established with substantial evidence that two or more gang members committed the crime together, unless there is evidence that they were 'on a frolic and detour unrelated to the gang.' " (*Ibid.*) "The second prong 'requires that a defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members." ' " (*Id.* at p. 484, fn. omitted.)

Here, there was substantial evidence showing that Flores's crime was "gang related" within the meaning of former subdivision (b)(1)(C) of section 186.22. Garcia relied on Flores, not only as his spouse but as a fellow Fresno Bulldog gang member, to dispose of evidence used in the shooting of two perceived rival gang members, and both could rely upon one another not to talk to law enforcement. The jury could therefore conclude Flores's crime was committed in association with the Fresno Bulldogs. Moreover, the gang experts' opinion that Flores's crime would benefit her reputationally, and by implication, the Fresno Bulldogs, was sufficient to show that she acted for the benefit of the gang. (See, e.g., *People v. Albillar* (2010) 51 Cal.4th 47, 63 ["[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of ... a[ ] criminal street gang' within the meaning of section 186.22(b)(1)' "].)

Because Flores committed the crime of accessory after the fact to assist Garcia, an active Fresno Bulldog gang member, the jury could also find she had the specific intent to

18.

promote, further, or assist criminal conduct by a member of the gang. (*People v. Albillar, supra,* 51 Cal.4th at p. 68 ["if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members"].) There was therefore sufficient evidence to support the jury's true finding on the remaining criminal street gang enhancement attached to count 10.

" 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial. [Citations.] " 'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' " ' " (*People v. Sek*, *supra*, 74 Cal.App.5th at pp. 669-670; see *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand."].) We therefore remand this matter back to the lower court for retrial on the gang enhancement allegation, at the prosecutor's discretion.

### DISPOSITION

Flores's conviction on count 11 is reversed. The jury's true findings on the criminal street gang enhancements are vacated. The matter is remanded back to the trial court for further proceedings. The People shall have 60 days from the date of the remittitur in which to file an election to retry Flores on the gang enhancement attached to count 10. If the People elect not to retry her, the trial court shall resentence Flores accordingly. Following the conclusion of proceedings, the court shall amend the abstract of judgment in a manner consistent with this disposition and forward copies of the

19.

amended abstract to the appropriate law enforcement and custodial officials.  In all other respects the judgment is affirmed.